## WILLIAM MATCH AND WIFE v. CLARK A. HUNT AND WIFE.

*Fraudulent Representations—Conditional Relief—Interest Under Decree.*

Fraud lies in a representation made with the knowledge that it is received in a sense that makes it deceptive.

Equity takes cognizance of cases in which a party is deceived as to material things by means well fitted to cause the deception, and which the party using them had good reason to know actually caused it.

Parol misrepresentations are not so merged in written ones as to be excluded from evidence in an action for fraud.

Facts on which defendants propose to rely should be set up in the answer.

Where complainants have acquiesced in a decree from which defendants have appealed, the Supreme Court on affirming it cannot enlarge the relief granted them.

A decree ordering a reference to ascertain amounts due defendant and granting relief on condition of their repayment, should fix the time within which repayment is to be made after confirmation of the report on the reference; and farther provide that in case of default the bill be dismissed.

Where a report on an order of reference must be confirmed before a decree can be carried into effect, interest runs from the date of confirmation.

Where relief is conditioned on repayment of moneys, and complainants do not make default, they recover costs of both courts, which can be held back from the amounts ascertained to be payable; if they do make default, defendants recover the costs and have execution for the collection.

Appeal from Barry. Submitted October 3, 1877. Decided January 9, 1878.

BILL to rescind. The facts are in the opinion.

*Sweezey & Knappen* for complainants. False statements of value support a liability in damages when made in detail (*Van Epps v. Harrison*, 5 Hill, 70; *Hubbell v. Meigs*, 50 N. Y., 480; *Dawes v. King*, 1 Starkie, 75) whether with personal knowledge (*Medbury v. Watson*, 6 Met., 246; *Cronk v. Cole*, 10 Ind., 485; *Simar v. Canaday*, 53 N. Y., 298; *McClellan v. Scott*, 24 Wis., 81) or not (*Steinbach v. Hill*, 25 Mich., 78; Adams' Eq., 177, n. and cases) and even if the party deceived had means of knowledge, id., 177, n. and cases; *Webster v. Bailey*, 31 Mich., 36; and a contract based on them may be rescinded, *Miner v. Medbury*, 6 Wis., 295; *Rood v. Cha-*

*pin*, Walk. Ch., 79. The representations may be oral, *Indianapolis Ry. Co. v. Tyng*, 63 N. Y., 653; *Wardell v. Fosdick*, 13 Johns., 325; *Ward v. Wiman*, 17 Wend., 193. Tender of reconveyance or repayment is not necessary before bringing suit to rescind, *Dunn v. Amos*, 14 Wis., 115; *Hanscom v. Hinman*, 30 Mich., 419; it is enough if complainant be satisfied that the court will place defendant in as good a situation as before (*Allerton v. Allerton*, 50 N. Y., 670), or if he offers to do whatever the court adjudges equitable, *Harding v. Handy*, 11 Wheat., 103. If an offer to reconvey is promptly made, it is no defense that the defendant has parted with the property, *Hammond v. Pennock*, 61 N. Y., 145.

*Smith & Knappen* for defendants. Statements made in good faith in a bargain are merged in an express warranty, *Horner v. Fellows*, 1 Doug. [Mich.], 54; *Welsh v. Carter*, 1 Wend., 189; *Martin v. Hamlin*, 18 Mich., 164, and cases cited. Unless fraud is shown beyond reasonable doubt (*Buck v. Sherman*, 2 Doug. [Mich.], 176) a sale cannot be rescinded except for breach of written guaranty (*Culver v. Avery*, 7 Wend., 386) nor unless complainants can restore the property in the condition in which it was when the fraud was discovered, *Carroll v. Rice*, Walk. Ch., 381; *De Armand v. Phillips*, id., 186.

GRAVES, J. This bill was filed in order to rescind an exchange of lands made in February, 1874, on account of fraud. The court decreed for complainants and the defendants appealed.

The defendants Hunt and wife formerly lived in the town of Hope in Barry county, and some time after the civil war removed to Cedar county in Missouri. In 1873 they returned to Barry county, reaching the town of Johnstown July 6th. They held a place of one hundred acres in Cedar county, and lived upon it some time during their stay in Missouri. The title was in Mrs. Hunt.

The complainants Match and wife resided in the town of Baltimore in Barry county on a farm of eighty acres, the title to which was in complainant William. This farm was a very good one, and worth from $3,000 to $4,000. It was incumbered by two mortgages made by complainants, one December 26th, 1871, to Evaline Beaman, for $1,000, payable in five years, with interest at ten per cent.; the other December 23d, 1873, to Levi Bristol, for $242, payable in two years, with interest at ten per cent.

After some negotiation between complainants and defendants, they completed an exchange of their farms February 20th, 1874. By mutual arrangement the Barry county land was deeded to Mrs. Hunt and the Missouri land to Mrs. Match. In the trade the Barry county place was valued at $3,800 and the Missouri land at $1,800, and the former was to be taken by Mrs. Hunt subject to the mortgage debts, and the remaining difference was to be paid down by Hunt in cash. This difference was ascertained to be $736.93, and was paid.

Complainants had never seen the Missouri land, and its character and surrounding advantages were particularly explained to them on the part of defendants in a series of representations. Complainants gave defendants possession of the farm in Barry county, and, after selling off their personal effects, they proceeded to the place in Cedar county, Missouri. They reached the place about April 9th, 1874, and, after remaining a few days, returned. Very shortly afterwards complainant Match informed Hunt that the place was not as represented, and asked him what he intended to do about it, and he replied in substance that he should do nothing. In a few days this bill was filed. It set out with much particularity the representations claimed to have been made; that they were relied on and were false. As alleged they were material. The answer substantially admitted the fact of making all the imputed representations except one relating to the nearness of a railroad station, and it

was claimed that what was stated on that subject was to the effect only that when they removed from the farm the Kansas City & Memphis Railroad was nearly graded to the village of Greenville, some thirteen miles distant, and that it was thought it would soon be completed to that place and when so completed, a station would undoubtedly be placed there, as it was a village of some little importance.

The answer insisted that all the representations actually made were true. Among other things represented was the capacity of the farm for tillage and the supply of water. It was distinctly represented that the whole farm except about eight acres consisted of good tillable land, and that there were two springs of water and a good well. An endeavor seems to have been made by the defense to reduce this representation about the springs and well to a sense which would render it nearly meaningless. It was sought to produce an opinion that the springs were not described as perennial or the well as durable, but as affording water only when it was not very dry. The attempt failed. The case shows they were in fact referred to as durable. But if the words had not been as claimed by complainants, there could have been no question about the meaning and effect. The idea conveyed, and intended to be conveyed, could not be doubted. No play upon terms could avert the sting of the representation. The knowledge of its reception in a sense rendering it deceptive would be enough to affect the conscience of the utterer.

Now the evidence is decisive that about sixty acres of the farm are unfit for cultivation, and that it is extremely questionable to say the least whether this portion could be made fit by an outlay of more than it would be worth after being brought into condition. And it is equally clear that during the dry season there is no water. The well fails at such times, and the spots mentioned as springs furnish no water. Again, it appears clear that the farm was represented as being within thir-

teen miles of a railroad, and between three and four of a grist mill and saw mill, whilst in fact the nearest railroad is about twenty-five miles distant, if not farther, the nearest saw-mill ten, and the nearest grist-mill thirteen miles. It is true that when Hunt left the farm in Cedar county for a place some few miles distant there were mills within about three miles and a half; but they were abandoned before he removed from Missouri, and the statement when made concerning the close vicinity of milling accommodations was untrue and deceptive.

The case is clear that in regard to things material and substantial the complainants were deceived by means the defendants used, and which were well fitted to cause such deception, and which they knew, or had good reason to know were actually causing it. There was ample ground for an appeal to equity. *Converse v. Blumrich,* 14 Mich., 109; *Beebe v. Young,* id., 136; *Rood v. Chapin,* Walk. Ch., 79; *Jones v. Wing & Dean,* Har. Ch., 301; *Steinbach v. Hill,* 25 Mich., 78; *Beebe v. Knapp,* 28 Mich., 53; *Bristol v. Braidwood,* id., 191; *Stone v. Covell,* 29 Mich., 359; *Mizner v. Kussell,* id., 229; *Webster v. Bailey,* 31 Mich., 36; *Browne v. Moore,* 32 Mich., 254; *Starkweather v. Benjamin,* id., 305.

On occasion of the conveyance, Mrs. Hunt delivered a written statement which contained a portion of the representations relied on, but not all. Several which had been previously communicated orally were not embraced. It is now urged as matter of law that these last were cut off by the deeds and other writings, or merged in them. This is not so. All authority is the other way. There was room for fraudulent deception by parol or writing, or both. If in the perpetration of a cheat writing is used, it does not imply that oral statements could not concur. The right to impeach the transaction by parol on the ground of fraud is unquestionable. Whether as matter of fact any thing outside of the writings was considered as representations still standing, and

was relied upon, should be decided upon a view of all
the circumstances.   And according to the weight of evi-
dence the material representations not covered by the
writing were understood as remaining and actually ex-
erted influence.   The point is not important, because
there is enough in the written statement to sustain the
bill.    It was there represented that there were not to
exceed eight acres of waste land in the farm.    The na-
ture and degree of proof of misrepresentations are suffi-
cient.    *Watkins v. Wallace,* 19 Mich., 57–77; *O'Donnell
v. Segar,* 25 Mich., 367–378.

The ground of defense that complainants have leased
the Missouri farm, and hence have deprived themselves
of power to restore it in its former condition is not made
out.   In the course of his deposition given in August, 1874,
one Edgerton deposed that he then resided on the place
and had continued to reside on it from and including
the previous season.   He therefore began about a year
before Mrs. Hunt deeded.   Upon cross-examination in
July, 1875, and about a year later, Mrs. Match testified as
follows:   "I heard Match say while we were in Missouri,
that he had rented or let Edgerton have that farm in Mis-
souri.   I don't know how long for.   He was on the land
when Hunt owned it."   The phase of the defense now no-
ticed is based on this statement.   This language is not
clear, and the occupancy to which it referred is left uncer-
tain.   It is very evident no pains were taken to inform
Mrs. Match that the subject was of sufficient importance
to require her to be explicit, or to make it needful to ob-
tain a definite and accurate explanation.

There is nothing in this piece of testimony to show
that Edgerton occupied upon terms which could in any
way interfere with a judicial rescission of the trade in
question, or even any thing proving satisfactorily that
Edgerton had more from Match than his permission to
continue subject to Hunt's will.   Indeed, it is not too
much to say, in view of the apparent indifference to
Edgerton's tenure and its derivation when Mrs. Match

testified, and in view of the laxity of expression in her
testimony and the fact that Edgerton went in under
Hunt, that she may possibly have meant Hunt instead
of Match who had rented or let to Edgerton.   She had
just been speaking of Hunt.    Moreover, the place had
been deeded to her, and if her husband had disposed of
it, it is not unreasonable to suppose she would not have
been so dubious about the nature of the disposition.

It is, however, useless to speculate upon this bit of
testimony.    It is too ambiguous, too unprecise to cause
the effect claimed for it.    Before seeking to rest upon it
the defendants should have made the fact clear.    They
could have had no difficulty in showing if such was the
case that Edgerton was holding under Mrs. Match upon
terms which precluded complainants from making a full
surrender.    They did not set up the fact in their answer
or give the proper proof.

Finally, the defendants insist that if the transaction
ought to be rescinded they should still be allowed inter-
est on the money they paid as difference between the
places, the interest on the sums paid by them on the
mortgages, the cost of the improvements they have made,
and their costs of the cause.

We are unable to concur in this claim.

The court ought not to assist the defendants to make
a speculation out of the transaction which on account of
their fraud the principles of the court compel it to set
aside; and such, we apprehend, would be the certain
result of compliance with the claim now noticed.

The farm is conceded to be one of superior produc-
tiveness, and the defendants have had the use of it since
the spring of 1874.   They also received with it ten acres
of wheat, and they make no offer to allow anything for
that crop or for the use of the place.

Complainants on the other hand were caused a con-
siderable outlay in going to the Missouri farm.

The decree requires repayment of $736.93, being the

amount paid in cash by defendants and also whatever sums may have been paid by defendants on the two mortgages which were on the farm in Barry county deeded to Mrs. Hunt. We cannot enlarge the relief to complainants, because they have acquiesced in the decree, and the wheat crop taken by defendants in the summer of 1874, and a fair occupation allowance for the farm with an additional amount by way of interest on these items would probably exceed the claims for interest and improvements. *Neblett v. Macfarland*, 92 U. S., 101; *Allore v. Jewell*, 94 U. S., 506, 512.

Some irregularity in the construction of the decree is noticed. It orders a reference to ascertain the amounts paid by defendants on the two mortgages before mentioned, and complainants are required to repay the sums found to have been thus paid, together with the sum of $736.93, which was paid to complainants as difference between the places; and repayment of these items is made a condition precedent to reconveyance by defendants. No time, however, is fixed for this repayment. The matter is left wholly at large. The decree should provide that it be made within some proper and stated time after confirmation of the report of the amount paid on the mortgage with interest from such confirmation, and that in case of default the bill stand dismissed out of court. In case no default is made by complainants, they should recover their costs of both courts, the same being deducted and kept back from the amount ascertained to be payable by them to defendants; and on the other hand if complainants make default the defendants should recover their costs of both courts, and have execution for the collection thereof.

The decree should be modified according to this opinion, the cause being remanded therefor, and for such other and further proceedings as shall be necessary.

The other Justices concurred.