CURTIS J. JUDD, Appellant, v. ALTEN M. WALKER and FRED NAXERA.

Division One, December 23, 1908.

1. FRAUD AND DECEIT: Necessary Elements: Selling Land. False representations of the vendor on material facts leading up to the sale, with his knowledge of their falsity and a present intention that they are to be believed and acted on by the vendee, coupled with the vendee's ignorance of their falsity and his reliance and acting on such representations to his resulting damage, make up the constituent elements of a typical case of actionable fraud and deceit.

2. ————: **Selling Land: Representations as to Acres.** False statements and representations made by the vendor, positively and as of his own knowledge, as to the number of acres in a certain tract of land, when the tract is being negotiated by the acre, are not regarded as expressions of opinion, but are considered statements of fact, and as such constitute fraud. [Disapproving Mires v. Summerville, 85 Mo. App. 183.]

3. ————: ————: ————: **Emptor Caveat: Patent Facts.** It is only where the fact falsely represented by the vendor is open and patent to the senses of a vendee exercising ordinary business care and attention, that the rule of *emptor caveat* applies. The fact that the vendee went upon the irregular tract of land twice before purchasing it and viewed it, does not entitle the vendor to invoke the rule of *emptor caveat* when sued by the vendee for damages for falsely and positively stating the number of acres the tract contained to be more than it in fact contained, for the falsity of that statement is not patent and open. It is a matter of common knowledge that one cannot view an irregular tract of land and arrive at an accurate estimate of its contents.

4. ————: ————: ————: ————: **Measuring.** Where the vendor, who knows, falsely and positively represents the tract to contain a certain number of acres, the vendee, who goes upon the tract and views it before purchasing, is not required to measure it in order to ascertain the number of acres. He is only required to use that business circumspection that prudent men usually exercise in like transactions; and where positive representations are given by the vendor of the number of acres, ordinary business prudence, though he sees the irregular tract and might have caused a survey to be made, does not require the vendee to measure the tract.

5. ————: ————: ————: **Taking Advantage of Own Rascality.** Where fair dealing is departed from by the vendor making false statements of fact as of his own knowledge, the falsity of which is not palpable to the purchaser, the vendee has the undoubted right to rely implicitly upon such statements, and the vendor when sued for fraud and deceit is in no position to avail himself of the vendee's lack of care and attention. The law will not, in such case, permit the vendor to escape his duty to recoup the vendee for the damage resulting from his false representation, by urging the folly of the vendee, or by admitting that he himself was a knave and a scoundrel, or by averring that the defrauded vendee was negligent and careless in believing and trusting the falsehood of the vendor.

6. ——————: ——————: Misrepresentations of Agent: Liability of Principal. Although the owner of the land took no part personally in the fraudulent representations of his agent as to the number of acres in the irregular tract, yet if he became aware of the fraud being perpetrated on the vendee in time to have prevented it, but instead of doing so deliberately became a party thereto by executing a deed purporting to convey more land than he owned or claimed to own, and took an obligation from his agent to protect himself in the event the fraud should be discovered and he should be called upon for reimbursement on account thereof, he is liable for damages, in the vendor's action for fraud and deceit, for the injury done by the false representations of his agent.

7. ——————: ——————: ——————: ——————: Scope of Agent's Authority. It is within the scope of the authority of an agent to sell land, to represent the acreage of a tract in his hands for sale; and when he makes false representations as to the number of acres they bind his principal, although the principal had no personal knowledge of them, especially where the principal ratifies and adopts them.

8. DEFECT OF PARTIES: Raised by Answer. An objection that the suit is not being prosecuted by all the parties in interest may be raised by the answer where the defect is not disclosed in the petition.

9. ——————: Fraud and Deceit: Vendee's Agent. In a suit by the vendee of land against the vendor and his agent, for fraud and deceit, based upon fraudulent representations of the vendor's agent that the tract contained more acres than were conveyed to and paid for by the vendee, the agent of the vendee, with whom the trade was made, and who furnished none of the purchase money and will not receive any profit for his services unless the land is sold at a profit, is not a necessary party plaintiff. If it was the vendee's money that the vendor or his agent received by the fraud, the vendee's agent is not a necessary party, although in a final adjustment of the matters pertaining to the transaction he may be entitled, from his principal (the vendee), to some money as his share of the profits, and is that far interested in the result of the suit. But it is no concern of the vendor or his agent that the vendee may share in that profit. It is *res inter alios acta* as to them.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*Ball & Sparrow* for appellant.

*Pearson & Pearson* for respondent Walker.

(1)  (a)  It is the duty of the court to construe the terms of a contract. Keaton v. Boughton, 83 Mo. App. 165; State ex rel. v. Lefaivre, 53 Mo. 471; Chapman v. Railroad, 114 Mo. 551; Ford v. Dyer, 148 Mo. 541; Edwards v. Smith, Admr., 63 Mo. 127. And as far as possible the construction the parties have given to a contract will to a large extent govern the court in construing the terms of such contract. St. Joseph U. D. Co. v. Railroad, 131 Mo. 291; Meyer v. Christopher, 176 Mo. 580; Sawyer v. Sanderson & Thomas, 113 Mo. App. 233; St. Louis v. Laclede Gas Co., 155 Mo. 1; Green v. Higham, 161 Mo. 333.  (b)  The testimony of Judd that he and Bourland had no agreement whereby Bourland was called his agent; that he was to get no salary, commission, or anything of that kind, but was to share equally in the profits, and bear one-half the losses, establishes the relationship not of principal and agent, but of partners. When one party contributes the capital and other the labor and skill, or experience for carrying on a joint enterprise, such a combination constitutes a partnership, unless something appears to indicate the absence of joint ownership of the business and profits. Torbett v. Jeffrey, 161 Mo. 645; Steckman v. Bank, 126 Mo. App. 664; Glore v. Dawson, 106 Mo. App. 107; Tamblyn v. Scott, 111 Mo. App. 46. There is no evidence in this record to overcome the legal presumption that these parties were partners.  (2)  If the contract under which these parties were operating is construed to make Bourland a partner in this enterprise with Judd, then this action should have been brought in the name of the real parties in interest; and these were the individuals composing the partnership. Bourland should have been made a party plaintiff. Conrad v. Spink, 38 Mo. App. 309; Mitchell v. Rialton, 45 Mo. App. 282; Hammersmith v. Hilton, 8 Mo. App. 564; Steckman v. Bank, 126

Mo. App. 668.   (3)   The abstract was called for by
the contract, was furnished, and was in the hands of
Bourland and his attorney one month previous to ex-
ecution of deed to Judd; was carefully examined by
plaintiff's attorney and casually examined by Bour-
land.  This abstract contained the deed that conveyed
this tract of land to Naxera as 160 acres, more or less;
and also contained deed or deeds that had previously
described this same tract of land as containing 178
acres.   This abstract gave plaintiff all the informa-
tion Walker had, or claimed to have had, concerning
the title to this land, and the number of acres it con-
tained as shown by the various deeds from various
grantors, from the Government down to and includ-
ing deed from Conrad to Naxera, which deed was in-
troduced in evidence, but the abstract was not.   (4)
Walker did not know, and did not claim or represent
to Bourland that he knew the exact number of acres in
said tract of land.   We do not think the record justifies
the conclusion or statement in the opinion of the Court
of Appeals that:   "The evidence shows conclusively
that Walker made positive representations to Bourland
as to the number of acres in tract," etc.   But, on the
contrary, Bourland testified positively that Walker
told him he did not know the exact acreage of the tract
of land; that the abstract would show it.   If Walker
told Bourland, as Bourland testifies, that he did not
know how many acres were in this tract of land; that
he would, and did, furnish him with an abstract, which
showed this same tract of land had been described
in various deeds as containing different number of
acres, and delivered to him a deed by which Naxera
obtained title, describing tract as 160 acres—then any
statement made by Walker to Bourland at any time
during the course of negotiations as to the number of
acres in said tract of land could not have been con-
sidered or treated by Bourland as a statement of facts,
positively and of his own knowledge, but a mere ex-

pression of opinion, and cannot be held to constitute fraud.

*Matson & May* for respondent Naxera.

(1) Plaintiff is not entitled to recover under the pleadings and the evidence, and the action of the court in instructing the jury to find for this defendant is correct. Mires v. Summerville, 85 Mo. App. 183; Boxley v. Stevens, 31 Mo. 201; Sullivan v. Ferguson, 40 Mo. 79; Martin v. Stone, 79 Mo. App. 309; Gordan v. Parmallee, 2 Allen (Mass.) 212; Mooney v. Miller, 102 Mass. 217; Credle v. Swindle, 63 N. C. 305; Dunn v. White, 63 Mo. 182; Hitchcock v. Baughn, 36 Mo. App. 216; Faulconer v. Samples, 57 Mo. App. 302; Anderson v. McPike, 86 Mo. 263; Lewis v. Brookdale Land Co., 124 Mo. 687; Langdon v. Green, 49 Mo. 363; Seay v. Sanders, 88 Mo. App. 478. (2) Bourland should have been made a party plaintiff, under his testimony and the testimony of plaintiff Judd. He has an interest in this suit. White v. Dyer, 81 Mo. App. 645; Seay v. Sanders, 88 Mo. App. 478; R. S. 1899, sec. 540; Wilson v. Polk Co., 112 Mo. 126. (3) In so far as the contract between Walker and Bourland is concerned, Naxera cannot be bound by it, for the reason he is not a party to it, and it is within the Statute of Frauds and Walker had not been "authorized by Naxera in writing to make said contract for him." R. S. 1899, sec. 3418; Hackett v. Watts, 138 Mo. 502. (4) The Statute of Frauds is available as a defense without being specially pleaded and may be proved under a general denial. Hillman v. Allen, 145 Mo. 638.

LAMM, J.—Judd, the plaintiff, resides in Brookline, Massachusetts, but is in business at Dwight, Illinois. Bourland resides at Pontiac, Illinois. The defendants, Walker and Naxera, reside in Buffalo township, Pike county, Missouri. Naxera owned two tracts

of land in Pike county, Illinois. Walker was Naxera's agent to sell them. Bourland was Judd's agent to buy them. So acting, at a certain time Bourland purchased from Walker said tracts of Illinois land. Judd and Bourland were strangers in that vicinity and unfamiliar with the lands. Walker and Naxera were familiar with the lands and Walker made false representations as to the acreage. After the deed passed from Naxera to Judd, it was ascertained there was a serious discrepancy in the amount of land conveyed by the deed, whereby Judd paid over $1,000 for land he did not get and which Naxera did not own and knew he did not own. Thereupon Judd sued Naxera and Walker for damages in the Louisiana Court of Common Pleas, grounding his action on fraud and deceit. No question is made on the pleadings and the facts seem to be of such sort that the law should throw no mere captious obstacle on dry technicality in the road of recovery—to the contrary, should put its benediction on the effort if it can be done without overturning settled principles.

The laws of hospitality seem to require that strangers should be taken in in a good sense, but courts should be astute to not permit such a "taking in" as appears here.

At a trial in that court with the aid of a jury, at the close of plaintiff's evidence, he was cast by a peremptory instruction. Thereat he appealed to the St. Louis Court of Appeals. That court, speaking through NORTONI, J., handed down a unanimous opinion reversing and remanding the case (Judd v. Walker, 114 Mo. App. 128), but certified it here, being of mind that its opinion was in conflict with Mires v. Summerville, 85 Mo. App. 183, decided by the Kansas City Court of Appeals.

The statement of facts by Judge NORTONI and his conclusions of law follow:

"This is an action at law on an allegation of fraud and deceit for the sale of lands. The evidence was to the effect that the plaintiff, Curtis J. Judd, treasurer of the Keeley Company of Dwight, Illinois, is a man of means and invests surplus money in lands. One Bourland, a banker of Pontiac, Illinois, and Mr. Judd have an arrangement whereby Bourland looks around for lands out of which money can be made by buying and reselling, and upon locating such lands, Mr. Judd furnishes the money and the land is purchased in the name of Judd as a speculation. The business is all done by Bourland, subject to Judd's approval. On the occasion in question, Bourland, as agent of Judd, came to Louisiana, Missouri, in search of lands and met the defendant Walker, a real estate agent at that place, who drove him across the Mississippi river into Pike county, Illinois, and upon the lands of the defendant Naxera, which he then had for sale as agent for Naxera. The land was irregular in shape, being bounded on one side by the Sny and running to a dull point on the north end. Walker, Naxera's agent, informed Bourland, Judd's agent, that the two pieces of land which were adjacent and owned by Naxera, contained one hundred and seventy-eight acres, one piece containing eighty acres and the other ninety-eight acres, and offered the tract at forty dollars per acre. Bourland looked at the land and they then drove on and viewed other properties. Returning to Louisiana, both Bourland and one Sims, a friend of Bourland who was accompanying him on the trip, informed Walker that Bourland was acting for Judd and that he would wire Judd for consent to buy the Naxera lands, which he did and received Judd's permission by wire, which was communicated to Walker. On the following day, Bourland drove to and upon the lands in order to locate a certain slough thereon, and that evening paid Walker $200 earnest money and entered into a contract in writing, whereby he

agreed to purchase said lands as soon as Walker could procure satisfactory abstracts, conveyances, etc. At the time of executing this contract, Walker said he was not sure of the number of acres in excess of ninety in the irregular-shaped tract adjacent to the Sny and therefore they had better put in the contract the round number of ninety acres and would ascertain definitely thereafter. A month later Walker drew up a deed which was executed by his principal, Naxera, and acknowledged before Walker as a notary public, which deed purported to convey to Judd the two tracts of land mentioned, one hundred and seventy-eight acres, for which a draft payable to Walker, covering the balance due at $40 per acre, was delivered to the bank in payment therefor, and the deed was thereupon delivered to Judd.

"It was shown by the evidence both of Walker and Naxera, as well as otherwise, that each of them knew there was not one hundred and seventy-eight acres of the land; that Naxera claimed to own one hundred and sixty acres only, and that he refused to execute the deed for one hundred and seventy-eight acres at Walker's request and advised with friends about it before signing the same, and finally consented to do so upon the agent Walker giving him a written obligation to hold him harmless in event the shortage of acres was discovered and he would be called upon to make good; that Naxera received pay for one hundred and sixty acres of the land at forty dollars per acre, less Walker's commission, a total of $640, and that Walker appropriated to his own use, with Naxera's consent and approval, forty dollars per acre for the remaining eighteen acres, besides his commission. Some time thereafter, Judd caused the land to be surveyed, whereby it was ascertained that it contained 153.24 acres only, instead of one hundred and seventy-eight acres, there being a shortage of 24.76 acres. One witness also testified that between the time of the negotiation of the

land and the making of the deed, Walker told him in his (Walker's) office that Bourland was going to take the land and that he was getting paid for a number of acres, something like twenty-seven acres, more than there was in the tract. Upon this state of facts, this suit for fraud and deceit was instituted to recover this shortage at forty dollars per acre.

"The salient points clearly established by the evidence are that Walker was the agent for Naxera for the sale of these lands; that Bourland was the agent of Judd to buy and so informed Walker during the negotiations; that Bourland viewed the lands twice before the purchase; that Walker made positive and direct representations to Bourland, in the presence of Sims, that the irregular tract contained ninety-eight acres and the whole tract contained one hundred and seventy-eight acres; that such representations were then false and were known by Walker to be false when made; that Bourland believed and relied upon such representations, trusting thereto, and made the purchase and caused Judd to pay for the land upon the faith thereof; that the purchase was not made in a lump but at an agreed price of forty dollars per acre; that the land was of such irregular shape as would render it impossible for one to form an accurate judgment as to the number of acres contained therein; that the defendant Naxera did not meet the purchaser nor his agent and personally made no representations, but that both he and Walker knew, however, that there were not one hundred and seventy-eight acres in the tract and that he only claimed one hundred and sixty acres; that Naxera had knowledge of the transaction before its consummation and assisted his agent, Walker, to consummate the fraud by executing a deed for one hundred and seventy-eight acres of land, taking an obligation from Walker to protect himself, together with compensation for one hundred and sixty acres, or

six and seventy-six one-hundredths acres more than he owned, permitting Walker to appropriate forty dollars per acre for the land which Naxera did not claim to own.

"Bourland had no interest in the land. His arrangement with Judd is to the effect that he looks up and purchases the lands for which Judd furnishes the money. Bourland then finds a buyer and sells the land and they divide the profits and losses occasioned by such sales. The land mentioned herein, together with other adjoining lands purchased at the same time from other parties, were all sold by Judd prior to the filing of this suit, at a profit sufficient to reimburse him for his entire expenditure in that behalf and therefore there was no loss such as would or did occasion a contribution from Bourland to Judd on account of the shortage of acres in the Naxera tract.

"Separate answers by each defendant consisted of a general denial and a plea that the cause was not prosecuted by all of the parties in interest, thereby raising the point that because of such arrangement as to profits and losses above mentioned, between Bourland and Judd, Bourland was a necessary party plaintiff.

"At the conclusion of the evidence for the plaintiff, the court peremptorily instructed the jury that the finding should be for the defendant. In obedience thereto, the jury returned a verdict as directed. After unsuccessful motions to set the same aside and for new trial, plaintiff appeals.

"1. There are cases which hold that where the parties go upon the land during negotiations and the seller points out the true boundaries thereof to the purchaser, with the statement of the number of acres contained therein, and upon this statement of the acreage the purchaser relies and purchases the land, no action of deceit can be maintained by the injured party on account thereof. The reason assigned in

these cases seems to be two-fold: first, that parties ought not rely on such statements; and, second, that the parties were upon the land and the means of information were equally open to both, therefore the rule *caveat emptor* applies, as the true number of acres could be ascertained by ordinary vigilance on the part of the purchaser. This doctrine is announced in the following cases: Gordon v. Parmelee, 2 Allen (Mass.) 212; Mooney v. Miller, 102 Mass. 217; Credle v. Swindell, 63 N. C. 305. The Kansas City Court of Appeals, in the case of Mires v. Summerville, 85 Mo. App. 183, following the Massachusetts case of Gordon v. Parmelee, supra, applied the same rule to the case therein decided. In that case as reported, however, it does not appear that the seller pointed out the true boundaries of the land and this seems to be the principal fact upon which the judgments were predicated in the cases above cited. In fact, the Kansas City Court of Appeals, in the case mentioned, carried the doctrine of *caveat emptor* to its extreme limit, if not beyond it, and we are confronted with their adjudication in the present controversy. After much careful and painstaking investigation, we are satisfied that the law is quite generally established throughout those jurisdictions where the common law obtains, to the effect that false statements and representations made by the vendor, positively as of his own knowledge, as to the number of acres in a certain tract of land when the tract is being negotiated by the acre, are not regarded as expressions of opinion, but on the contrary, are considered statements of fact, and as such constitute fraud. This is certainly the doctrine of our Supreme Court. [McGhee v. Bell, 170 Mo. 121; (see also dissenting opinion, 170 Mo. 150); Buford v. Caldwell, 3 Mo. 477; Hitchcock v. Baughan, 44 Mo. App. 42; Brooking v. Shinn, 25 Mo. App. 277; Leicher v. Keeney, 98 Mo. App. 394; Starkweather v. Benjamin, 32 Mich. 305; Dunn v. White, Admr., 63 Mo. 181;

Foster v. Kennedy, 38 Ala. 359; Beardsley v. Duntley, 69 N. Y. 577; Coon v. Atwell, 46 N. H. 510; Whitney v. Allaire, 1 N. Y. 305; Clark v. Baird, 9 N. Y. 183; Weatherford v. Fishback, 4 Ill. 170; Griswold v. Gebbie, 126 Pa. St. 353; Hill v. Brower, 76 N. C. 124.] This view has become almost universally recognized and adopted by the courts throughout the country. The generally accepted doctrine on the subject is thus announced in 14 Am. and Eng. Ency. Law (2 Ed.), 45: 'There are some cases in which it has been held or said that a false statement as to the boundaries of a tract of land, or as to the number of acres which it contains, will not support an action of deceit, but they base the rule on the ground that such statements ought not to be relied upon, and not on the ground that they are expressions of opinion. Statements as to such matters, if made by a person positively, and as of his own knowledge, are statements of fact, and have often been held to constitute fraud.'

"In fact, the rule announced above is the same which applies in cases of fraud and deceit generally and is to the effect that the party owning the property or article, is presumed to know the facts. No one has prevented him from knowing them and one dealing with him has the right to rely upon the positive statements and representations of fact pertaining thereto, even though the means of knowledge were specially open to him, provided the representations were relied upon and were sufficient to and did actually induce action, for the law will not hear the guilty party say, 'You were yourself guilty of negligence,' or 'You ought not to have trusted me.' [Bigelow on Fraud, 523, 524; Kerr on Fraud (2 Ed.), 40-42; Cottrill v. Krum, 100 Mo. 397; Barker v. Scudder, 56 Mo. 272; Carter v. Black, 46 Mo. 384; Buford v. Caldwell, 3 Mo. 477; Smithers v. Bircher, 2 Mo. App. 499.]

"2. This case reeks with fraud. The evidence shows conclusively that Walker made positive repre-

sentations to Bourland as to the number of acres in the tract from the inception of the trade up to the time of drawing the contract, at which time he suggested that as he was not sure of the exact number of acres in excess of ninety, they would call the irregular tract ninety acres in round numbers, leaving the impression that in the interim, prior to the making of the deed, he would ascertain the true acreage. Bourland relied upon what he said and trusted to him to make good his representations. Walker himself drew the deed for one hundred and seventy-eight acres, and procured his principal's signature thereto by giving to him an obligation of indemnity as mentioned, and collected the cash for the full number of acres as represented by him in the first instance, knowing at the time that he was then and there perpetrating a heinous fraud upon the purchaser. It would seem that in a case of such gross deception a recovery should be had without much difficulty. The respondent contends, however, that inasmuch as Bourland went upon the land twice and viewed the same, the parties were then upon an equal footing, and means of knowledge being open to him, the rule of *caveat emptor* applies; that it was the purchaser's duty to use his senses and vigilance and ascertain for himself the true facts, and not having done so, a recovery is precluded. The cases of Mires v. Summerville, Mooney v. Miller, Gordon v. Parmelee, and Credle v. Swindell, supra, are cited and relied upon as supporting this contention.

"Chancellor Kent says: 'The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information. It reconciles the claims of convenience with the duties of good faith, to every extent compatible with the interests of commerce. This it does by requiring the purchaser

to apply his attention to those particulars which may be supposed within the *reach of his observation and judgment;* and the vendor to communicate those particulars and defects which cannot be supposed *to be immediately within the reach of such attention.* If the purchaser be wanting of attention to these points, where attention would have been sufficient to protect him from surprise or imposition, the maxim, *caveat emptor,* ought to apply.' [2 Kent's Comm. (14 Ed.), 484, 485.]

"The true test of the application of the rule *caveat emptor,* is the liability of the defect complained of to the observation and judgment of one exercising ordinary and usual business attention, care and circumspection, that is, such care and attention as is usually exercised by ordinarily prudent men in like business affairs. The law requires this much and no more. It does not require nor expect the purchaser to exercise a degree of care and prudence greater than business men ordinarily exercise in like transactions. The rule is a reasonable one and its chief purpose is to require men to see and know such things as are open and patent to their senses upon penalty. It is where the defect complained of is open and patent to the senses of one exercising ordinary business care and attention only that the rule of *caveat emptor* applies. [2 Kent's Comm. (14 Ed.), 479-484; Weatherford v. Fishback, 4 Ill. 170; Starkweather v. Benjamin, 32 Mich. 305.] The rule mentioned has been carried to its full extent in this State. In Morse v. Rathburn, 49 Mo. 91, the alleged false representations were that certain unimproved portions of the farms were well timbered and that the soil was good, whereas most of the timber had been cut off and the land was broken and rocky. The plaintiff having been over the land during negotiations, the court very properly denied a recovery by the application of the rule aforesaid, on the ground that the matters and things about which the alleged false

representations were made were open to the observation of the purchaser. To the same effect is the case of McFarland v. Carver, 34 Mo. 195, in which case the fraud and deceit alleged was as to certain representations regarding the quality of lands and it appeared that one hundred and twenty acres thereof were subject to overflow. The court held that if the defect was patent to observation, no recovery could be had therefor.

"Respondents press the case of Langdon v. Green, 49 Mo. 363, upon us and insist that it is in point here. In that case, the rule of *caveat emptor* was applied and recovery on account of false representations was defeated. By a careful perusal of that opinion, it will be observed that the case is quite different from the one at bar. There the misrepresentations complained of (insofar as the land was concerned) were that 'only a certain amount of the land had been washed away by the Missouri river' (l. c. 365), whereas a larger quantity had been washed away, and at page 370 it is shown that the complaining party was familiar with the premises and had had the same in his hands for sale as agent for several months immediately prior to his purchase. It was upon this state of facts that the rule of means of knowledge was applied and we think, properly, as in that case the complaining party being familiar with the premises, the amount of land washed away by the river was patent, the defect was open to the senses of the purchaser and the rule *caveat emptor* ought to apply. It was a proper case for its application as we understand the law, for it goes without saying that a man may look over a piece of land and discover about how much it is damaged by the washing away of the soil, whereas it would be quite impossible for him to look at a tract and say how many acres are contained therein. That case is not an authority on the state of facts now under consideration. Each of those cases, and in fact all of the well-considered cases, treat

of the rule as one resting upon reason and applying only where the matters complained of were equally open to the senses of the parties and liable to discovery by the exercise of ordinary business sagacity, and, in fact, it is said the principle is not applicable at all where there is a positive misrepresentation of a fact essential and material to the subject in question and proper diligence has been used by the purchaser in the course of the transaction, and proper diligence is only such diligence as is usually employed by prudent men in like affairs. [Kerr on Fraud (2 Ed.), 42; 14 Am. and Eng. Ency. Law (2 Ed.), 119.] On the other hand, in Stebbins v. Eddy, 4 Mason 414 and 420, Judge Story says: 'Where the sale is fair, and the parties are equally innocent, there is little, if any hardship, and much convenience in holding to the rule of *caveat emptor.*' We might add here that the general doctrine laid down in the books as elementary is that the doctrine of notice and means of knowledge has no application where distinct and positive representations of fact have been made, have been relied upon and have induced action. [Kerr on Fraud (2 Ed.), 40-41; Bigelow on Fraud, 533, 534; Herman v. Hall, 140 Mo. 270; Cottrill v. Krum, 100 Mo. 397.]

"Entertaining these views, we are fully persuaded that the case under consideration is not one where the rule should find application. To apply it here, we must find that the alleged shortage of acres in the tract was open and patent to the observation of the purchaser and within the range of his senses while viewing the lands. This we cannot do as it is a matter of common knowledge that a man cannot view a tract of land and arrive at anything like an accurate estimate of its contents. As said by the Supreme Court of Michigan: 'It cannot be generally true that a person can judge of the contents of a piece of land by the eye.' [Starkweather v. Benjamin, 32 Mich. 305.] See, also, McGhee v. Bell, 170 Mo. 121, where, in both

opinions, this case is quoted and approved (Majority opinion, 1. c. 135; dissenting opinion, 1. c. 150); and also cited approvingly by the Kansas City Court of Appeals in Leicher v. Keeney, 98 Mo. App. 394, a case more recent than Mires v. Summerville, supra.

"3. Considering the next proposition, that Bourland having viewed the lands, he should have used vigilance to ascertain the fact of acreage. To follow out this suggestion, a survey would have been necessary. The rule only requires that Bourland should use that degree of business circumspection usually exercised by prudent men in like transactions. This being true, he would be chargeable with neglect in that behalf only in event that prudent men usually cause surveys to be made under like circumstances. In dealing with this suggestion, we must apply a degree of common sense commensurate with the case in hand and view it in the light of common knowledge and every-day experience pertaining to like affairs. From these bearings, we all know that land in large tracts is bought and sold almost daily by the acre in this country without surveys. This arises no doubt from the fact that the original Government surveys are usually accurate and men rely thereon, together with the presumption usually indulged that he who owns the land knows the acreage, and the negotiations are generally had on the faith of prior surveys, and representation of the owner. The citizens of Missouri from time immemorial have been accustomed to deal with the utmost good faith in matters of this kind, and it would be a sad commentary indeed upon the moral sense and integrity of the State for the courts to say even by inference that our citizens can no longer be trusted in this behalf. Our conclusion is that in case of positive representation of a given number of acres in a tract, ordinary business prudence does not require a survey and measurement thereof and that the party relying upon such representations of fact is not pre-

cluded from recovery by not causing measurements to be made in advance of the purchase.

"The words 'means of knowledge easily within reach' employed in some of the cases ought not to be construed to require the purchaser to seek out and employ a survey or for the purpose of verifying a fact positively asserted by the seller.

"4. There is yet an additional reason why this case should have gone to the jury. Respondents were in no position to avail themselves of appellant's want of care and lack of attention. The general rule seems to be well settled that where the parties deal fairly or at arm's length, the rule of *caveat emptor* as above indicated applies, but when fair dealing is departed from by the vendor making false statements of fact as of his own knowledge, the falsity of which is not palpable to the purchaser, the purchaser has the undoubted right to rely implicitly upon such statements and the principle has no application (Authorities supra), and in event the purchaser is entrapped thereby and afterwards calls upon the vendor in a court of justice to make compensation for his deceit, the law will not permit him to escape by urging the folly of his dupe nor by admitting that he, the seller, was a knave and a scoundrel, and averring the defrauded party was negligent and careless in thus believing and trusting him, for this would be equivalent to saying, 'You trusted me, therefore I have a right to betray you.' [Cottrill v. Krum, 100 Mo. 397; Leicher v. Keeney, 98 Mo. App. 394; Fargo Gaslight & Coke Co. v. Fargo Gas & Electric Co., 4 N. D. 219, 37 L. R. A. 593; Mead v. Bunn, 32 N. Y. 280; Redding v. Wright, 49 Minn. 322; Linington v. Strong, 107 Ill. 302; Labbe v. Corbett, 69 Tex. 509; Watson v. Atwood, 25 Conn. 320; Maxfield v. Schwartz, 10 L. R. A. (Minn.) 607; Graham v. Thompson, 55 Ark. 299; Kiefer v. Rogers, 19 Minn. 38; McGhee v. Bell, 170 Mo. 121.]

"On this question, Mr. Bigelow states the law

thus: 'The proposition has now become very widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were specially open to him, or though he had legal notice, as e. g., in the public registry, of the real state of things. It may be improbable that a man with the truth in reach should accept a representation made in regard to it, but the improbability can be no more than matter of fact. If the representation were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead); for it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me," or, "You were yourself guilty of negligence." This indeed appears to be true even of cases in which the injured party had in fact made a partial examination. Nor is the rule applicable merely to cases which in some respects stand upon special ground, as, e. g., suits for specific performance; it applies to rescission equally, *and indeed is a general rule.*' [Bigelow on Fraud, 523-525.]

"Mr. Kerr, in his work on Fraud (2 Ed.), 40, 41, says: 'If a definite or particular statement be made as to the contents of property, and the statement be untrue, it is not enough that the party to whom the representation was made may have been acquainted with the property. A very intimate knowledge with the premises will not necessarily imply knowledge of their exact contents, while the particularity of the statement will naturally convey the notion of exact admeasurement. The fact that he had the means of knowing or of obtaining information of the truth which he did not use is not sufficient. It is not indeed enough

that he may have been wanting in caution. A man who has made false representations, by which he has induced another to enter into a transaction, cannot turn around on the person whom he has defrauded and say that he ought to have been more prudent and ought not to have concluded the representations to be true in the sense which the language used naturally and fairly imports. Nor is it enough that there may be circumstances in the case' which, in the absence of the representation, might have been sufficient to put him on inquiry. The doctrine of notice has no application where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation and need not make any further inquiry, although there are circumstances in the case from which an inference inconsistent with the representations might be drawn. He is not bound to inquire unless something has happened to excite suspicion, or unless there is something in the case or in the terms of the representation to put him on inquiry. The party who has made the representation cannot be allowed to say that he told him where further information was to be got, or recommended him to take advice, and even put into his hands the means of discovering the truth. However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has relied too implicitly on the truth of what he himself stated.'

"The doctrine of the two learned authors above is evidently both sound and just and it is the doctrine of our Supreme Court on the subject, as appears from Cottrill v. Krum, 100 Mo. 397, as well as McGhee v. Bell, 170 Mo. 121.

"5. The cases of Dunn v. White, Admr., supra; Green v. Worman, 83 Mo. App. 568, and Hitchcock v. Baughan, 36 Mo. App. 216, cited and relied on by

respondents, are not in point here. Those cases are treated by the courts as belonging to that class in which no actual fraud is shown and the controversy arose out of honest error and mistaken opinion, as where the parties being on the land and the seller informs the purchaser that he did not know where the boundaries were, but pointed out what he *thought to be such,* such statements, instead of being treated as a positive statement of fact, it is held, amounted to no more than an honest expression of opinion and was evidently so understood by the parties at the time, and inasmuch as the purchaser knew as much about the boundaries as did the seller and the seller did not attempt to make any positive representation of fact pertaining thereto, a recovery at law could not be had thereon. Notwithstanding the very high opinion we entertain of the Kansas City Court of Appeals and the very great esteem in which we hold the learned judge who wrote the opinion in the case of Mires v. Summerville, 85 Mo. App. 183, after much careful and painstaking investigation and mature deliberation, we are constrained and persuaded to hold that the facts in this record make a proper case for the jury and that the learned trial judge erred in peremptorily directing a verdict for the respondents.

"6. It is conclusively shown that while the respondent Naxera may have taken no part personally in the fraudulent representations, he became aware of the fraud being perpetrated in time to have prevented it, but instead of so doing, deliberately became a party thereto by executing a deed purporting to convey more land than he owned or claimed to own and took an obligation from his agent Walker to protect himself in the event the fraud was discovered and he would be called upon for reimbursement on account thereof. He also accepted compensation for more land than he owned, all of which appears from his own testimony. It is a familiar principle that false and fraudulent

representations of an agent, when acting within the scope of his authority, binds his principal, and to represent the acreage of a tract of land in his hands for sale is within the scope of authority of a real estate agent beyond question. It is likewise familiar law that a principal cannot take any benefit arising by virtue of the false and fraudulent representations of his agent within the scope of his authority, although he may have been no party to the representations. He cannot adopt and take benefit for a contract of sale brought about and entered into by such fraud of the agent on his behalf, and at the same time repudiate the fraud upon which the transaction was built. The statements and representations in this case were clearly ratified and adopted by Naxera and he is jointly liable with Walker therefor. [Kerr on Fraud (2 Ed.), 82; Green v. Worman, 83 Mo. App. 568; Griswold v. Gebbie, 126 Pa. St. 353; Morse v. Rathburn, 49 Mo. 91; Short v. Stephens, 92 Mo. App. 151.]

"7. Bourland had no interest in the subject of this controversy and is not a necessary party to the suit.

"For the reasons above given, the judgment is reversed and the cause remanded to be proceeded with as herein indicated.

"It appearing that the views entertained by this court and herein announced are contrary to and in conflict with those expressed by the Kansas City Court of Appeals in the case of Mires v. Summerville, 85 Mo. App. 183, this case is therefore certified to the Supreme Court for final determination, in accordance with the constitutional mandate in that behalf provided. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur."

We approve the statement of facts by the learned judge and his conclusions of law. Would it not be a shame to jurisprudence if, on the facts found, the conclusions drawn did not irresistibly follow? True,

Naxera made no false representations of material facts in person to either Judd or Bourland, but his mouthpiece, Walker, did, and Naxera after notice adopted the transaction and either shared in the polluted gains or aided Walker in pocketing them. True, the written contract preceding the deed was signed by Bourland as a party thereto. But Walker knew at that time that Bourland represented another, and, if he did not know it at that time, both he and Naxera knew it before the deed was made by Naxera to Judd. True, the false representations relating to acreage antedated the written contract and the deed, but the fraud was not merged in those instruments. [Gooch v. Conner, 8 Mo. 391; Tyler v. Anderson, 106 Ind. 185; Match v. Hunt, 38 Mich. 1; Thomas v. Beebe, 25 N. Y. 244; Franco-Texan Land Co. v. Simpson, 20 S. W. 953.]

As we read the record, there is present here a typical case of actionable fraud and deceit. For instance: False representations of the vendor on material facts leading up to the sale, with his knowledge of their falsity and a present intention they should be believed and acted on by the vendee, coupled with the vendee's ignorance of their falsity and his reliance and acting on such representations to his resulting damage. The fraud, resting in parol, may be proved by parol, and the written documents were mere steps in that proof.

It is elementary that a grantee, defrauded as was Judd, is not obliged to sue on the covenants of warranty in his deed nor need he go into equity to rescind the contract, but he may hold what he got under the contract and sue at law for his damages. That is what Judd did in this case.

In the course of the trial, defendants amended their answers adding to a general denial an averment to the effect that the suit was not being prosecuted in the name of all the real parties in interest and that not

all persons having an interest in the subject of the action and in obtaining the relief demanded are joined as parties. It is contended now that the demurrer was properly sustained because the proof tended to establish the averment added by amendment. That method of raising the absence of proper parties to the action is well enough where the defect is not disclosed in the petition (Nugent v. Armour Packing Co., 208 Mo. 1. c. 494, *et seq.*), but there is no evidence to sustain the averment. It is insisted that Bourland owned an interest in the land and was a necessary party. But, on the stand, he disavows such interest. The testimony shows that he was the mere agent of Judd. Judd paid the money for the imaginary land. The loss came from his pocket and should go back there in the first instance. The fact that, as between Judd and his agent Bourland, on a final settlement of their affairs, Judd may owe Bourland a portion of the net profits of the transaction as his commission or share when the land is sold, is no concern of Walker and Naxera. It is *res inter alios acta* as to them. They are in no danger of having to pay for their fraud *twice*. Where the shoe pinches them is in having to pay *once*. *Hinc illae lacrimae.*

Mires v. Summerville, 85 Mo. App. 183, is scantily reported on the facts, and we shall not say the case was not well decided on the record in that case. But the learned judge who wrote the opinion ruled to the effect that if a vendee is well acquainted with the land purchased and was over it at the time of the trade with opportunity to measure the same, he cannot be heard to charge the vendor with fraud in misrepresenting the number of acres it contained. That rule is too harsh as a general proposition. Of course if the vendor and vendee have equal opportunities to know the acreage and no false representations are made and acted on, the rule is well enough. But if the rule be construed to mean that a vendee must survey the land

and measure it, no difference as to the size of the tract
or whether its boundaries are irregular or not, and can-
not rely on the positive assurance of the vendor as to
his knowledge of the number of acres in his own land,
then we do not agree to it as good doctrine. Such
defect as a deficiency in acreage is not a patent de-
fect to be got at by the use of natural faculties and
the exercise of ordinary diligence in a land sale. Due
diligence does not require that the vendee should sus-
pect the vendor of lying nor that the vendee should
survey and measure the land to prevent being deceived
by the lies of the vendor. It has sometimes been loose-
ly said that the *negligence* of the vendee will prevent
recovery for the fraud of the vendor. The word "neg-
ligence" used in that connection, as we understand its
meaning in the law of negligence, is an unhappy ex-
pression. Fraud is a wilful, malevolent act directed
to perpetrating a wrong to the rights of another. That
such an act in a vendor should not be actionable be-
cause of the mere negligence or inadvertence of the
vendee in preventing the fraud, ought to be neither
good ethics nor good law. If one voluntarily shuts his
eyes when to open them is to see, such a one is guilty
of an act of folly (in dealing at arm's length with an-
other) to his own injury, and the affairs of men could
not go on if courts were being called upon to rip up
transactions of that sort. For instance, if B wants
oats and A shows B an open sack of beans (both A and
B being *sui juris* and knowing beans when the bag is
open) and A tells B they are oats, B ought not to com-
plain when he buys the sack because he gets beans.
If C points D to his horses in the field and tells D they
are black when in fact they are white and D buys them
for black horses, he is guilty of an act of folly and has
no remedy. If E takes F over his hilly, broken land
and tells F it is level and arable and F buys it as level,

arable land, he ought not to recover. In such case the fraud is made innocuous by the fact that it was patent to the vendee. The vendee is held to know what his own eyes would disclose, and, knowing, could not be deceived. But when an element of wilful deception leads up to a transaction, the whole situation changes. Take a very old case put in a well-authenticated record: Joab said to Amasa, "Art thou in health, my brother? And Joab took Amasa *by the beard with the right hand to kiss him.* But Amasa took no heed of the sword that was in Joab's hand; so he smote him therewith in the fifth rib, and shed out his bowels to the ground, and struck him not again; and he died"—in that case, was Amasa to blame for being deceived by the usual sign of oriental *friendly* salution, though a fighting soldier held sword in hand? And, generally speaking, until there be written into the law some precept or rule to the effect that the heart of man is as prone to wickedness as is the smoke to go upward, and that every one must deal with his fellow man as if he was a thief and a robber, it ought not to be held that trust cannot be put in a positive assertion of a material fact, known to the speaker and unknown to the hearer, and intended to be relied on.

At least twice since the Mires case, the Kansas City Court of Appeals has held in judgment questions of fraud and deceit in land sales. [Leicher v. Keeney, 98 Mo. App. 394, and Leicher v. Keeney, 110 Mo. App. 292.] Those cases seem to inferentially modify the Mires case. But whether they do or not, in so far as it announces views contrary to Judd v. Walker, 114 Mo. App. 128, it is overruled.

The premises considered, the judgment of the Louisiana Court of Common Pleas is reversed and the cause is remanded to be retried in accordance with the views expressed in the opinion of NORTONI, J., and in this. All concur.