JOSEPHINE GANAHL, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, July 3, 1917.

1. **NEGLIGENCE: Instructions: Submitting Acts Constituting Negligence.** The instructions submitting the question of liability in a negligence case should not set out particular facts in evidence for comment, but should charge as to what acts on the part of defendant, if the jury find they were committed, would constitute negligence in the eye of the law.

2. **STREET RAILWAYS: Injury to Passenger: Unsafe Stopping Place: Instructions.** In an action against a street railway company for injuries sustained by a passenger in falling or being thrown from the running board of a street car, *held* that an instruction directing a finding for plaintiff if the jury found that the stopping place *"described by the witnesses"* was not a reasonably safe one and that plaintiff was thereby caused to fall from the car, was not erroneous, on the ground that it permitted a recovery upon a mere finding that the stopping place was unsafe, without requiring a finding that certain conditions existed, which would warrant the conclusion that it was unsafe, in view of the fact that the witnesses for both plaintiff and defendant, in describing the stopping place, testified to a state of facts which would warrant a finding that it was not reasonably safe.

3. ———: ———: ———: **Sufficiency of Evidence.** In such case, evidence *held* sufficient to warrant a finding that defendant was negligent in using and maintaining a stopping place for the discharge of its passengers that was not reasonably safe.

4. ———: ———: **Unsafe Stopping Place: Premature Start: Consistency of Theories.** In such case, *held* that plaintiff's testimony justified a verdict in her favor either on the theory that the stopping place was not reasonably safe or on the theory that she was thrown from the running board by reason of a sudden starting of the car, or on both theories, and that these theories are not inconsistent, and hence the trial court did not err in submitting both theories for the jury's consideration.

5. **PLEADING: Inconsistent Causes of Action: Waiver.** Defendant waives the point that the petition counts on inconsistent theories, if he does not attack it by a demurrer or by a motion to elect.

6. **NEGLIGENCE: Concurrent Acts.** Defendant is liable if his act of negligence concurred with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause, although not the sole cause.

7. ———: ———. Where plaintiff's action is based on two or more acts of negligence, not inconsistent, and there is sufficient proof to submit them to the jury, a verdict for plaintiff may be predicated on a finding that the injury was proximately caused by any one of such acts, or by two or more concurrently, although none was the sole cause.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*A. E. L. Gardner, W. M. Hezel* and *T. E. Francis* for appellant.

(1) Plaintiff's instructions Nos. 1 and 2 are erroneous because they permitted a recovery on the theory that the place at which the car stopped for the disembarkation of passengers was not a "reasonably safe place," without defining that term or requiring a finding of the facts from which the conclusion might be drawn that the place was not reasonably safe; that is to say, these instructions do not require the jury to find that the step was too high or that the ground was uneven or rough or such other fact as would warrant the conclusion that the place was unsafe, but leave it to the untrammeled discretion of the jury to determine what would constitute a "reasonably safe place," and hence they are a mere "roving commission." Winslow v. Railroad Co., 192 S. W. (Mo. App.), 121, 125; Roberts v. Piedmont, 166 Mo. App. 1, 9; Miller v. United Railways Co., 155 Mo. App. 528, 545-6; Allen v. St. Louis Transit Co., 183 Mo. 411, 432; Allen v. Lumber Co., 190 Mo. App. 399, 406; Mulderig v. Railroad, 116 Mo. App. 655, 667; Summers v. Transit Co., 108 Mo. App. 319, 323-4; Martin v. Butler County Railroad Co., 175 Mo. App. 464, 469. (2) Plaintiff's instructions Nos. 1 and 2 are erroneous for the further reason that, even if the stopping place were not a

"reasonably safe" one, nevertheless that fact or condition would not entitle plaintiff to recover, since, having testified and tried the case on the theory that she was standing on the running board when the car started with a jerk and that the jerk caused her to fall, the "unsafe condition" (whatever that might mean) could not have been the proximate cause of the accident. State ex rel. v. Ellison, 176 S. W. 11, 13; Jackson v. Butler, 249 Mo. 342, 365; Battles v. Railroad, 178 Mo. App. 596, 614. (3) The theory that the place was not a reasonably safe one is repugnant to plaintiff's version of the accident and the theory upon which her case was tried; and it, therefore, follows that plaintiff's instruction No. 2, which permitted a recovery on that theory, was erroneous. Defendant's evidence, to the effect that plaintiff fell or jumped from the car, did not warrant a finding that the alleged unsafe condition of the stopping place had any connection with plaintiff's injury; but even if it did, a recovery could not be had upon that theory, under such evidence, for the reason that that evidence was contradictory of and inconsistent with plaintiff's version of the accident and the theory upon which she presented her claim. Behen v. Transit Co., 186 Mo. 430, 440; Graefe v. Transit Co., 224 Mo. 264.

*Randolph Laughlin* for respondent.

(1) (a) Where the relation of carrier and passenger exists, a general allegation of negligence, general proof and a general instruction are all that is required. Evans v. Railroad, 222 Mo. 453, quoting Beave v. Railroad, 212 Mo. 331; Schwanenfeldt v. Met. St. Ry. Co., 187 Mo. App. 588, 591; Black v. Street Ry. Co., 162 Mo. App. 90, 96; Gibler v. Railroad, 148 Mo. App. 475, 486-487; Roscoe v. Railroad, 202 Mo. 576, 587. (b) Independent of the relation of passenger and carrier: Where the petition charges generally that a railroad company's stopping place is "not reasonably safe" it is proper to instruct the jury in the language of the petition, without commenting on the evidentiary facts which go to prove

the ultimate fact of unsafety.  Brown v. Hannibal &
St. J. Ry. Co., 99 Mo. 310; O'Mellia v. Railroad, 115
Mo. 205, 217; Miller v. United Ry. Co., 155 Mo. App.
528, 542; Wojtylak v. Coal Co., 188 Mo. 260, 281; Goode
v. Coal Co., 167 Mo. App. 169, 176; Wilks v. Railroad,
159 Mo. App. 723; Marques v. Koch, 176 Mo. App. 143;
Coin v. Lounge Co., 222 Mo. 506. It is only in those cases
where the petition itself alleges specific facts creating
a condition of unsafety, that the plaintiff is not permitted
to broaden the issue tendered by his petition by a general
instruction.     Allen v. Lumber Co., 190 Mo. App. 399,
402, 406.   (c)  Even if the instruction had been errone-
ous, the error would have been harmless, for the reason
that there was no contest over the proposition that de-
fendant's  stopping  place  was  not  reasonably  safe.
Davidson v. Transit Co., 211 Mo. 320, 356, 357, 359, 362;
R. S. 1909, secs. 2022, 2082; Johnson v. Traction Co., 178
Mo. App. 452; Keen v. Schuedler, 92 Mo. 516; Hormuth
v. Metropolitan Ry. Co., 129 Mo. 269; Bartley v. Metro-
politan Ry. Co., 148 Mo. 124; Baustian v. Young, 152 Mo.
921; Holwerson v. St. Louis Ry. Co., 157 Mo. 216; Norris
v. Railroad, 156 Mo. App. 204. (2) (a) Under the evidence
it was for the jury to determine whether the unsafe
condition of the stopping place was the whole or a part
of the proximate cause of the fall, or whether it was a
part of the proximate cause of the resulting injury
(if the stopping-place had been reasonably safe, the
plaintiff might not have been hurt, notwithstanding
the fact that she was thrown from the car).    1 Shear-
man & Redfield on Negligence (6 Ed.), sec. 55; Clemens
v. Railroad, 53 Mo. 366, 370; and authorities, *infra*,
Point 3 (b). (b) Having tried the case on the theory that
it was for the jury to determine the proximate cause of
plaintiff's fall and injury, appellant is bound by that
theory in this court.    Price v. Davis, 187 Mo. App.
10, and citations; Wallower v. Webb City, 171 Mo. App.
226; Hill v. Drug Co., 140 Mo. 439; Heffernan v. Rags-
dale, 199 Mo. 383; Steel Co. v. Symons, 110 Mo. App.
52; Henslee v. Cannefax, 49 Mo. 296.    (3)  (a)  Plaintiff's
instruction No. 1 is conjunctive, not disjunctive.    It re-

quires the jury, before returning a verdict in favor of plaintiff, to find, among other things: That the stopping-place was not reasonably safe; that defendant's negligence caused plaintiff to be thrown or fall from the car; that plaintiff's injuries were a direct result of defendant's negligence. (b) The cause of action was the injury, and it was for the jury to determine from the evidence whether the injury was caused by the aggressive negligence of the defendant in throwing plaintiff from the car, or by the passive negligence of the defendant in causing her to fall from the car, or by the concurrence of the two acts of negligence. There was nothing inconsistent between the two acts of negligence. The evidence tended to show that the defendant was guilty of both, and that both contributed to produce the injury. The proof of one did not disprove the other, but even had it done so, it would still have been permissible for plaintiff, in view of the fact that she had pleaded alternatively, to submit both theories to the jury and have the jury determine whether either or both was the proximate cause of her injury. R. S. 1909, sec. 1828; Waechter v. Railroad, 113 Mo. App. 270, 278; Wade v. Douglas, 161 Mo. App. 348, 357-358; Myers v. Adler, 188 Mo. App. 607, 617; Hendricks v. Calloway, 211 Mo. 536, 558; Drolshagen v. Railroad, 186 Mo. 262; Owens v. Railroad, 58 Mo. 394; Brownell v. Railroad, 47 Mo. 239, 243-244. (c) While the majority of plaintiff's witnesses testified that "the car gave a jerk, and threw her off, there was yet some evidence in her own case that the unsafe condition of the landing-place caused her to fall off in trying to step off. Her alternative pleading entitled her to have this evidence submitted to the jury. (d) The rule for which appellant contends would authorize appellant to take advantage of its own wrong; to defend against plaintiff's charge that it threw her off by saying that it was the negligently unsafe condition of its landing-place that caused her to fall off; to defend against her charge that the negligently unsafe condition of the landing-place caused her to fall off by saying that it threw her off; to defend a charge of a blow with proof that it was a kick;

and to defend a charge of assault with a revolver by proof that it was a pistol. (e) But if section 1828, R. S. 1909, is not sufficient to prevent a litigant from taking advantage of his own wrong, clearly section 2082 is adequate for that purpose. Defendant's own testimony was that plaintiff fell into a ditch (which it used as a stopping-place) in her effort to get off the car; that "she could not quite reach the ground; she was too short, and it looked to me like she jumped down or fell; let go and went backwards." On its own evidence defendant is clearly liable for plaintiff's injury, and, therefore, even had the court erred in permitting plaintiff to have the benefit of that evidence as well as her own, the error would not "materially affect the merits of the action." R. S. 1909, section 2082; Peterson v. Transit Co., 199 Mo. 331; Barkley v. Ass'n, 153 Mo. 300.

BECKER, J.—Plaintiff sued for personal injuries alleged to have been sustained by her while a passenger on one of defendant's electric street cars, and from a verdict and judgment in the sum of $5000 in favor of plaintiff and against the defendant, defendant appeals.

Plaintiff's petition alleges four specific assignments of negligence on the part of the defendant:

"That the defendant was guilty of negligence in the following particulars:

"(1) In that it used and maintained said Jack Bellairs' stopping place as a stopping place for the discharge of its passengers, and that said place was not a reasonably safe place for that purpose, and that the defendant knew, or by the exercise of ordinary care would have known, that said place was not a reasonably safe place for said purpose.

"(2) In that its conductor gave the bell on said car a sudden and impatient ring, while plaintiff was in the act of alighting, and that said ring was of itself calculated to alarm a passenger in the act of alighting, and thereby cause said passenger to exert all possible haste to complete the act of alighting in the belief that the car

was about to shoot forward, and that the passenger would be thrown therefrom.

"(3) In that it caused the car to jerk, jolt, or give a sudden movement at the time plaintiff was in the act of alighting therefrom.

"(4) In that it failed to cause the said car to remain motionless while plaintiff was in the act of alighting therefrom.

"Plaintiff alleges that some one of the negligent acts aforesaid, or that some combination of one of said negligent acts with one or more of the other of said negligent acts, or that all of said negligent acts together, was or were the proximate cause of her injuries; that she does not know of which of said alternatives is true, but she alleges that some one of them is true, and that she believes that each negligent act in itself was sufficient to cause her injuries, and that all of them together concurred to cause her injuries."

The answer was a general denial and a further answer that plaintiff was guilty of contributory negligence, in that she, "without looking and without exercising ordinary care to provide for her own safety, attempted to alight from defendant's car and by her carelessness and negligence in alighting from said car, she fell and sustained the injuries, if any, of which she complains."

The testimony showed that plaintiff, on September 13, 1912, became a passenger on one of the defendant's electric street cars, known as the Creve Coeur Lake Line, in the county of St. Louis, Missouri; that the car in question was what is commonly known as a "summer car," and had a running board on the outer side and an iron guard-wire on the inner side, and the seats of the car were placed at right angles with its main axis. The floor and seats of the car were some distance above the said running board, making it necessary for a passenger, in getting off, to step down to the running board and then take another step down from the running board to reach the ground.

When the car stopped at a place known as Jack Bellairs' place, at which the cars frequently stop at the re-

quest of passengers, witnesses for plaintiff, several in number, testified that the plaintiff, who was a woman sixty-five years of age, was in the act of alighting from the said car and had stepped from the main body of the car to the running board thereof, and while so standing on the running board with her right hand on the hand rail, she was thrown to the ground by reason of a sudden jerk, or sudden movement of the car; that at the point where the car stopped and the plaintiff was thrown off; the distance from the running board to the ground was quite high, being from eighteen to thirty inches, and furthermore that there was a sort of ditch at this point where plaintiff alighted, which was evidently used for the purpose of draining the water from the rails.

The motorman and conductor of the car in question testified that the car did not give a jerk at the time the plaintiff was alighting from the car. The conductor further testified that: "Plaintiff stepped off—she couldn't quite reach the ground; she was too short, and it looked to me like she jumped down or fell, let go and fell backwards." Another witness for the defendant, a woman, said she did not remember the car giving a jerk or jolt at the time, but stated she was not paying particular attention, as she was talking to her male companion. A male passenger testified for the defendant that there was no jerking of the car, and one witness, who at the time was in the employ of the defendant company, working at the power station at Creve Coeur Lake, testified that he was on the car in question and that as the car stopped he turned around to see who was getting off the car; that he saw plaintiff step on to the running board, "get hold of the handrail, and step down and as she let go she fell." One of defendant's witnesses admitted, on cross-examination, "that the running-board was pretty high from the ground."

It is practically conceded that there was no platform for the alighting of passengers at the point where the car stopped and plaintiff met with her injuries.

It is conceded that plaintiff suffered serious injuries, including a broken shoulder blade, a broken collar bone,

two broken ribs, left shoulder dislocation, and several ligaments torn and twisted in her right leg, which was also badly bruised, and a permanent loss of partial use of her right arm.

The court, at the close of the testimony, submitted the case to the jury, giving four instructions on behalf of the plaintiff, and eight on behalf of the defendant. ·

Appellant's first assignment of error is that instruction No. 2 is erroncous in that it permitted a recovery upon a mere finding that the stopping place was unsafe, without requiring a finding that the existing conditions, if any, would warrant the conclusion that said stopping place was unsafe.

In order that we may properly· review this assignment of error we set out instructions numbered 1 and 2 on behalf of the plaintiff, which read as follows:

"(1)   The court instructs the jury that if you find and believe from the evidence that on and prior to September 13, 1912, the defendant, the United Railways Company of St. Louis, was a corporation, and that it owned, operated, and maintained a double track electric railway in the county of St. Louis, commonly known as the Creve Coeur Lake Line, and that it owned, operated and maintained in connection therewith a street car, commonly known as a summer car, and that said car had a runningboard on the outer side, and an iron grill or guard-wire on the inner side, and seats at right angles with the main axis of the car and constructed some distance above the running-board; and that the defendant also owned, operated and maintained a trolley, trolley-wire, motor, controller and other electrical appliances in the control and operation of a motorman, and used for the purpose of propelling said car over and along said electric railway; and that on and prior to said date the defendant also owned and maintained a stopping place for discharging its passengers, commonly known as Jack Bellairs' place; and that on and prior to said date the said place was not a reasonably safe place for the discharge of passengers, and that on said day plaintiff was a passenger on said car, and that her fare had been paid thereon to said place, and

that the car had been signaled to stop at said place, and that the car had stopped there in obedience to said signal, if any; and that thereupon the plaintiff undertook to alight from said car, and that while she was attempting to alight from said car she was thrown or fell from said car, and that the defendant was guilty of negligence as elsewhere defined in these instructions, and that said negligence, if any, caused plaintiff to be thrown or to fall from said car, and that plaintiff was in the exercise of ordinary care at that time (by which is meant the exercise of such care as would be used by a person of ordinary care and caution under the same or like circumstances), and that said fall, if any, injured the plaintiff, and that her injuries, if any, were a direct result of said negligence, if any, on the part of said defendant, and that without said negligence, if any, the said injuries, if any, would not have been received, then you may return a verdict in favor of the plaintiff and against the defendant.''

''(2)   If you find and believe from the evidence in this case that on and prior to September 13, 1912, the defendant used and maintained the place described by the witnesses as Jack Bellairs' stopping place as a stopping place for the discharge of its passengers, and that said place was not a reasonably safe place for that purpose, and that the defendant knew, or by the exercise of ordinary care would have known, that said place was not a reasonably safe place for said purpose, then you may find that said defendant was guilty of negligence.

''Or if you find and believe from the evidence that the defendant negligently, that is, without exercising ordinary care, caused the car to jerk, jolt, or give a sudden movement at the time plaintiff was in the act of alighting therefrom, then you may find that the said defendant was guilty of negligence.

''By 'ordinary care' as used in this instruction, is meant such care as would be used by persons of ordinary prudence and caution under the same or like circumstances as those shown by the evidence in this case.''

The argument of appellant in support of this assignment of error is that the jury, by these instructions, were left to determine what would constitute a ''reasonably safe'' stopping place according to such standard as they might see fit to adopt; that these instructions gave leave to the jury to invoke their imaginations or draw upon mere conjectures, and that ''the jury were placed upon an uncharted sea without compass or pilot to guide them.'' ·

We have carefully examined the cases cited by appellant in support of its contention, but do not find them in point, for the reason that, in the instant case, the plaintiff's petition does not charge negligence in general terms merely, but sets up four distinct, specific acts of negligence; furthermore, there was substantial evidence adduced on the part of the plaintiff which tended to prove two of these alleged acts of negligence and sufficient to support the plaintiff's cause of action on either or both theories, that the place at which the car stopped for the discharge of passengers and at which the plaintiff met her injuries, was not a reasonably safe place for that purpose, or that the defendant was guilty of negligence, in that it caused the car to jerk, jolt or give a sudden movement at the time plaintiff was in the act of alighting therefrom. Plaintiff was therefore entitled to have the jury directed to find regarding those acts of negligence and no other. But this does not mean that the instructions must set out particular facts in evidence for comment, but that the instructions should tell the jury what acts on the part of the defendant, if the jury find they had been done, would constitute negligence in the eyes of the law. [Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268, and cases there cited.]

When we come to analyze the instructions complained of, we find that instruction No. 1 requires that the jury, before they may return a verdict in favor of plaintiff and against the defendant, should find that on the day on which plaintiff met with her injuries the place at which the car stopped for the discharge of passengers was not a reasonably safe one for the discharge of passengers, and that while plaintiff was attempting to alight from

said car she was thrown or fell from said car, and that the defendant was guilty of negligence as elsewhere defined in the instructions, and that said negligence, if any, caused plaintiff to be thrown or to fall from said car. Instruction No. 2, on the question of negligence, told the jury that if they found and believed from the evidence that the defendant used and maintained the place *described* by the witnesses as "Jack Bellairs' stopping place," as a stopping place for the discharge of its passengers, and that said place was not a reasonably safe one for that purpose, and that the defendant knew, or by the exercise of ordinary care should have known, that said place was not a reasonably safe place for said purpose, then they could find that the defendant was guilty of negligence. It is well to note that instruction No. 2 reads, "that if the jury find and believe that the defendant used and maintained the place described by the witnesses," for when we examine as to what the witnesses testified to in describing the stopping place in question, we find ample testimony to support a finding that it was not a reasonably safe one.

A. J. Jones, a witness for plaintiff, stated that at the stopping place in question the distance from the ground to the running board of the car was about two and one-half feet.

George V. Grass, a witness for plaintiff, testified that he was a passenger on the same car with the plaintiff at the time she met with her injuries. When asked what was the condition of the ground at the place the car stopped, answered: "Well, it seems to me like it was kind of an excavation there—probably, I presume two or three feet up against the high enbankment, as it came around this here loop;" that the running board was about two feet above the level of the ground.

John Grote, also a passenger on the same car with plaintiff, testified that in his judgment the running board, at the stopping place in question, was between twenty-five and thirty inches from the ground.

Joe Bohsen, a witness for plaintiff, testified that there was no platform at all at the place in question; that

he had seen a little place—a ditch—to drain the water off along the track about eight inches deep, and that the distance from the running board to the ground was eighteen to twenty inches.

Mrs. August Ganahl, a daughter-in-law of the plaintiff who was on the car accompanying plaintiff at the time she met with her injuries, stated that after the plaintiff had fallen she herself, in getting off the car, did not attempt to step off from the running board direct, but stepped down and sat on the running board and then stepped to the ground, and that the distance from the running board to the ground, in her opinion, was about two feet.

Mrs. Beckmeier, who lived at Creve Coeur Lake, testified that the distance from the running board to the ground was about two feet.

J. W. (or "Jack") Bellairs who conducted an amusement resort right adjoining Creve Coeur Lake at the time of the accident, testified that, "there was a gully there to let the water run down right around by my place, under a wooden platform—that is, a wooden pipe, and I should judge, from the gang-plank of the car, these open summer cars, it would measure not less than twenty-six or twenty-eight inches, maybe a little more, in some places."

August Ganahl testified for plaintiff that the ground at the stopping place, "sloped toward the cattle-guard; that is where the water went; it sloped, kind of, this way; there is a kind a ditch there, a kind of a ditch, like a gutter, rounded out, and I judge it is about, from the top of the ties, it would be about twelve or thirteen inches, that slope is there, from the top of the ties."

The plaintiff herself testified it was a good foot and a half from the running-board to the ground.

Mrs. J. W. Bellairs testified there was a ditch at the place the car stopped for the discharge of passengers, and that, "it was a high place to get off; that they had dug a trench there, to let the water run out, I think."

H. T. Crews, for the defendant, testified he was the conductor in charge of the car in question, and that plaintiff stepped off "she could not quite reach the

ground, she was too short and it looked to me like she jumped down or fell—let go and went backwards;" that the distance from the running-board was, "about eighteen inches, something like that." When asked if he had not testified at the previous trial that the distance was twenty-two inches, answered: "Well, I can't say, three or four inches that way; it may be I can't say about that." As to whether there was any platform at the stopping place, the witness stated: "I don't know, there is not much of a one, it is small if there is one, very small indeed." In answer to the question, "I understand you to say that when the old lady came to get off, the ground was a little bit too far and she could not reach it, is that right?" he answered, "Well, I did say so, yes; I said she was either too short or the ground was too far off, and she could not reach it; that is right."

John J. Gavin, the motorman in charge of the car in question, a witness for defendant, on cross-examination, stated that there was no platform at the stopping place in question.

Charles Neustadt, an attorney of East St. Louis, also a witness for the defendant, testified: "When the lady fell I turned around and looked out of the car; I noticed that the running board was pretty high from the ground."

Thus we find absolute uniformity in the testimony of all of the witnesses, both for the plaintiff and defendant, as to the character of the place, "described by the witnesses as Jack Bellairs' stopping place," which instruction No. 2 told the jury they should take into consideration in determining whether said stopping place was a reasonably safe place for the purpose of discharging passengers. We hold that if the jury found in favor of the plaintiff and against the defendant on the ground that the defendant was negligent in using and maintaining said Jack Bellairs' stopping place as a stopping place for the discharge of its passengers, and that said place was not a reasonably safe one for that purpose, there was ample testimony to sustain such a finding.

We observe also that respondent's additional abstract of the record contains the following: "Plaintiff, with the consent of defendant's counsel, introduced in evidence as and for the testimony of Mr. Frank Weller, the official stenographer of the court, a typewritten transcript of a portion of the opening statement of defendant's counsel."

"Said statement is in words and figures as follows: 'Finally the car did stop some distance west, as they got in around the loop—at a place which was not a stopping place for cars, and where no conveniences had been provided—at a place which they allege, and which we admit, was not a reasonably safe place for the discharge of passengers, and plaintiff knew it . . .' "

It appears that these remarks of counsel for defendant were made in his opening statement at a former trial of this case but were read in evidence "with consent of defendant's counsel" at this last trial.

We are clear in the opinion that the jury were not misled by the instructions complained of, particularly in view of the testimony of the witnesses set out above. As was said in the case of Dean v. Railroad, 199 Mo. 386. l. c. 396-7, 97 S. W. 910:

"Men, under oath in a box, taking a sober and vital part in the administration of justice, self-evidently are presumed by the law to be reasoning men—to be apt in solving the problems of life by the aid of reason, i. e. every-day sense. There ought to be no presumption indulged that, unless fenced in by the court at every single step, they will be prone to wander from the beaten path of reasonable certainty and probability (a path where effects are referred to their causes) and amuse themselves with wild goose chases in by-field of airy guess and unreasoning conjecture—the might possibly be—the material out of which old wives, with pipe in mouth, once constructed their fables in nook and by ingle. Therefore, while it may be conceded that the instruction is unfortunately worded, yet we adhere to our ruling in the Reynolds case, supra, 189 Mo. 408, l. c. 427, 88 S. W. 50, to the effect that it was not reversible error

to give it under the circumstances in judgment and with the restrictive limitations of the context; because, if we were once to adopt the rule of blinking the context and reversing cases where a word or a phrase, *standing alone,* admits of a double meaning, one of which might be mischievous, it is not apparent that the administration of justice would advance by that step, for under such construction cases affirmed on appeal might become as few and as far between as angels' visits.''

We accordingly rule this point against the appellant.

We next consider appellant's assignment of error that the theory that the place where the car stopped and where plaintiff was injured in attempting to alight therefrom, was not a reasonably safe one, is repugnant to plaintiff's version of the accident, in that plaintiff testified that, while standing upon the running board of the car, she was thrown off by reason of a sudden starting of the car, and, therefore, plaintiff's instruction number two, which permitted a recovery on that theory, was erroneous.

On an examination of the record we find, in plaintiff's own testimony, these questions and answers:

''Q. What happened when the car got to Bellairs' place?''

''A. Well, she (plaintiff's daughter-in-law) rang the bell to stop at Bellairs', but it didn't stop at Bellairs'; it went around the curve; went around a good piece, and then it stopped. My two—Willie went down first, and he helped his cousin Walter down; I was sitting right on the end, and when they were down, I got up and held myself with my right hand on the iron bar; then I put my right foot down on the running-board, and then I put my left foot down.''

''Q. Just show the jury how you did it.''

''A. And then, I looked; I said: 'O, that is too high for me—'Well, then I went off of the—held myself with the iron bar and stepped down with my right foot, and then with my left foot; then I looked down and I saw it was too high, and I stood there for a second or so; I looked that way, and just as I looked that way, the car

gave a jerk, and I flew into the ditch! it was pretty deep, and I fell right down."

"Q. About how far was the ground beneath the running-board at this place, where the car stopped?"

"A. Well, it was a good foot and a half from the running-board; that is the way I think, when I looked at it before I got down; I thought it was pretty high for me, and I couldn't step off."

Plaintiff's own testimony, as well as that of her witnesses, would have justified a verdict on either theory, and under these cirumstances the court properly submitted both theories for the jury's consideration. [Section 1828, Revised Statutes of Missouri, 1909; Waechter v. Railroad, 113 Mo. App. 270, l. c. 278, 88 S. W. 147; Wade v. Douglas, 161 Mo. App. 348, l. c. 357, 143 S. W. 830.]

We also note the fact that defendant did not see fit to attack plaintiff's petition either by answer or motion to elect on this score, and should therefore be deemed to have waived the same. But even had defendant done so, the two acts of negligence, as stated above, were not inconsistent, and the proving of one did not disprove the other.

It has been repeatedly held that defendant is liable, "if his act of negligence concurred with that of another, or with the act of God, or with an inanimate cause, and became a part of the direct and proximate cause, although not the sole cause." [Newcomb v. Railroad, 169 Mo. 409, l. c. 422, 69 S. W. 348, et seq., and cases cited. See, also, Harrison v. Kansas City Electric Light Co., 195 Mo. 606, l. c. 622, 623, 93 S. W. 951.] It naturally follows that where the basis of plaintiff's action is on two or more acts of negligence, and sufficient proof is adduced by plaintiff to submit two or more alleged acts of negligence on the part of defendant, not inconsistent, to the jury, the jury may return a verdict for plaintiff if they believe and find from the evidence that any one of such acts of negligence of defendant was the direct or proximate cause of plaintiff's injuries, or the jury could find for plaintiff if they believed and found that two or more of such alleged non-inconsistent acts of negligence of defendant concur-

red and jointly were the direct or proximate cause of the injury, although no one of the alleged acts of negligence of defendant was the sole cause thereof.

We hold that there was sufficient proof to submit both of the said alleged acts of negligence of the defendant to the jury; that these said acts of negligence were not inconsistent; that either one of such alleged acts could have been found by the jury to have been the direct and proximate cause of the injury, or the jury could well have found that both of the alleged acts of negligence concurred in causing plaintiff's injuries.

We therefore hold that the defendant in this respect was not prejudiced by the instructions complained of.

Upon a full consideration of the case we are of the opinion that the judgment is for the right party and that no substantial error was committed against the appellant materially affecting the merits of the action. The judgment is accordingly affirmed. *Reynolds, P. J.,* and *Allen, J.,* concur.