Harvey E. Hartz, Respondent, v. Charles G. Page, Appellant.*

Kansas City Court of Appeals.   June 10, 1929.

*Corpus Juris-Cyc. References: Accounts and Accounting, 1CJ, section 170, p. 657, n. 37; Partnership, 47CJ, section 389, p. 904, n. 27; section 542, p. 1005, n. 15; section 543, p. 1006, n. 38.

*Stubenrauch & Hartz* for respondent.

*J. Walter Farrar* and *O. C. Phillips* for appellant.

ARNOLD, J.—This is an action based upon two accounts involving the purchase of corn, payment for pasturage and for services of a veterinarian, in connection with the feeding and care of certain cattle. The suit originally was directed against defendants Charles G. Page and Paul Parkyn but there was no service on Parkyn and the cause was dismissed as to him.

The amended petition upon which the cause was tried is in two counts. The first alleges Charles G. Page and Paul Parkyn were partners in the business of pasturing and feeding cattle and speculating in the same; that for a number of years they had been feeding and pasturing cattle on the farm of one John Anders near Bertrand, Gasper County, Nebraska; that during the years 1925 and 1926, they pastured their cattle on the Anders farm, for the use of which they agreed to pay the sum of $283; that defendants purchased 2284 bushels and forty pounds of corn from Anders, for which they agreed to pay fifty seven cents per bushel; that on July 14, 1926, defendant Parkyn gave to said Anders a draft on defendant Page for the sum of $1595.29, to cover both the pasture and the corn, but that Page refused to pay the draft; that the amounts charged for said pasturage and corn at the time they were furnished and sold were reasonable and of the fair market value; that defendants promised and agreed to pay same, but though often requested, they have failed, refused and still fail and refuse to pay same and every part thereof; that on September 1, 1926, said John Anders, for value, assigned and transferred said claim to plaintiff and that plaintiff now is the owner and holder thereof.

The second count, after repeating the allegations as to partnership contained in the first, alleges Dr. C. J. Sall is a veterinarian located at Bertrand, Nebraska, and that he furnished medicine and professional services amounting to $144.90, in doctoring the cattle and caring for them. The assignment of this claim for value is alleged. Certain items in this account were eliminated at the trial and the amount as finally presented to the jury was $102.85. Judgment was asked on each count in the amount alleged.

The answer of defendant Page admits he was interested in certain cattle fed by Paul Parkyn on the Anders land under contract with Parkyn, by the terms of which Page agreed to advance the purchase price of the cattle; that Parkyn agreed to furnish the feed, medical services and care for them and after the money advanced was repaid, the net profits were to be equally divided between them; that whatever corn was purchased from John Anders was under contract between said Parkyn and Anders and that this defendant did not contract, nor authorize anyone to contract for him as his agent for the purchase of corn. The answer to the second count is a denial that the medicines and services were furnished at the request of

defendant, or of anyone authorized to contract for him, and states these items were to be furnished by Parkyn who was to be repaid only out of the proceeds of the cattle.

Peremptory instruction as to both counts were asked by defendant at the close of plaintiff's evidence and again at the close of all the evidence, but were refused and the cause was submitted to the jury. The verdict was for plaintiff in the sum of $1585.29 on the first count and $102.85 on the second. Judgment was entered accordingly and defendant appeals.

The evidence shows defendant Page was a live stock commission merchant doing business at the Kansas City Stock Yards; that Paul Parkyn was a tenant on the farm of John Anders near Bertrand, Nebraska, and that on or about October 1, 1922, said Page and Parkyn entered into a contract whereby Page was to furnish the money and Parkyn to feed cattle. It appears Parkyn leased from Anders 230 acres of corn land as well as some pasture from Anders; that Parkyn raised wheat, corn and cattle and had some horses and a few cattle of his own, individually. Joint notes and chattel mortgages for the purchase of the cattle to be fed were executed by Page and Parkyn. Parkyn raised some of the feed on the Anders land and bought some of others, drawing drafts on Page in payment therefor and these were accepted and paid by Page; and on one occasion Parkyn paid the freight charges on cars of feed by sight drafts on him. When ready for the market, after being fattened or conditioned by Parkyn on the farm, the cattle were shipped to the Kansas City market where they were sold, and Page and Parkyn shared equally the profits and losses thereon. The testimony shows the partnership began about October 1, 1922, and ended early in the year 1926.

There were about fifteen of these joint notes and mortgages introduced in evidence by plaintiff. It appears that at the beginning of the contract arrangement, these notes and mortgages were signed by Page and Parkyn individually, but later and during the years 1924 and 1925, they were generally executed by Page for the partnership, Page making affidavit that the stock belonged to the partnership of Page and Parkyn. At the trial Page produced his books which contained an account designated therein as Page and Parkyn account, covering the entire period from October 1, 1922, until its termination in 1926. This account showed that in paying for the feed and care of the cattle Parkyn gave drafts on Page to the various growers from whom the corn, hay or other feed was purchased, and that the amount of such drafts was charged to the Page and Parkyn account, as a charge against the cattle. This account showed drafts given for everything connected with the cost and expense of feeding and caring for the cattle, including drafts given John Anders and Dr. Sall during each year of the alleged partnership.

It is also shown in evidence that Page had a personal account on his books with Parkyn, and in order for Parkyn to receive payment for corn which he, himself, raised and fed to the partnership stock, credit was given for such amount on this personal account; and the item charged to the Page and Parkyn account. This account shows that on March 31, 1924, Parkyn received credit for corn which he raised and fed to the partnership stock in the sum of $1997, and on the same date the Page and Parkyn account was charged with the amount as expense against the stock. The same was true in varying sums on August 13, 1924, $62.70; April 2, 1925, $3200, and on February 17, 1926, on which date the last bunch of cattle was shipped to Kansas City, Parkyn received credit on his personal account for 3160 bushels of corn at fifty-five cents a bushel, $1738, which was charged on the same date to the Page and Parkyn account against the partnership cattle.

Plaintiff introduced in evidence depositions of witnesses from Bertrand, Nebraska, who testified to various sales of corn and feed made by them to Paul Parkyn during the period covered by the alleged partnership, and stated that in payment therefor Parkyn always gave them drafts on Page at Kansas City, Missouri. The station agent of the Burlington Railroad at Bertrand also testified by deposition that he was always paid in the same manner for items due the railroad during the period. The Page and Parkyn account showed all these items debited against the partnership cattle.

The testimony shows there were a number of accounts left unpaid after the last of the cattle belonging to the alleged partnership were shipped back to Kansas City, among which are the two items here involved. It is in evidence that Parkyn attempted to pay Anders' bill by giving a draft on Page in the same manner as before, but Page refused to honor the draft.

On behalf of defendant it was shown that the lease of the land was in writing and was from Anders to Parkyn personally, and it was contended that Anders and Dr. Sall had given sole credit to Parkyn for the corn and medical services furnished by them respectively. Page, in his own behalf, testified the contract between him and Parkyn entered into in 1922, was oral and under it Page was to furnish the cattle and Parkyn to feed them; that he (Page) sometimes lent money to Parkyn and at other times could not, with which to purchase feed for the cattle; that witness had no knowledge as to whether the corn bought from Anders was fed to the cattle or not; that he had no interest in the farming operations of Parkyn; that in 1925, Parkyn told witness he could furnish the feed for 100 cattle; that the said cattle were shipped to Parkyn and when sold, lost money; that Parkyn was buying, feeding and selling cattle on his own account during the time covered by the contract between them.

There are three assignments of error, the first of which is that the court erred in refusing defendant's peremptory instructions in the nature of demurrers at the close of plaintiff's case and again at the close of all the evidence. In support of this charge, it is argued there was no evidence offered to sustain the allegations of the petition; that the petition declares upon an express contract and therefore that plaintiff cannot recover upon an implied contract. A proper consideration of this point would seem to require an analysis of the petition.

The petition alleges that for a number of years defendants had been feeding and pasturing cattle on the farm of John Anders; that during the years 1925 and 1926, they pastured their cattle on said farm—

"For which said defendants agreed to pay to said John Anders the sum of $283 for the pasturage of said cattle; that said defendants further purchased of and from said John Anders during said years 1925 and 1926 a large amount of corn, to-wit: 2284 bushels and forty pounds, for which they agreed to pay said John Anders the sum of fifty-seven cents per bushel; . . ."

It the petition had stopped at that point, there might perhaps be substantial grounds for defendant's contention that an express contract was pleaded, but the next sentence following the one just quoted, and separated therefrom by a semicolon, is:

"That the above amounts charged for said pasturage and said corn were at the time same were sold and furnished, the reasonable and fair market value of same; that said defendants promised and agreed to pay same . . ."

The petition, perhaps, is somewhat inartistically drawn, but it is clear it does not plead an express or explicit contract, sometimes termed a special contract, though strictly speaking this means a contract under seal. The petition declares upon an implied contract, and recovery is sought on a *quantum meruit*, as specifically stated in the clause last above quoted. Taken as a whole, we hold the petition sought recovery upon an implied contract, and not upon an express or explicit one. This court in Stanley v. Whitlow, 181 Mo. App. 461, 464, 168 S. W. 840, carefully analyzed this question. The general rule in this respect is stated in 31 Cyc., p. 53, par. C, as follows:

"Where facts pleaded are such as to raise an implied contract, the fact that the pleader draws such conclusion from the facts will not cause the pleading to be regarded as averring an express contract."

And the Supreme Court, speaking through VALLIANT, J., in Wetmore v. Crouch, 150 Mo. 671, 681, say:

"The petition in this case concludes the statement of the agreement as follows:

"'It being further understood and agreed that the profits and losses, if any, of the venture should be shared equally between them.' Coun-

sel for respondent construe this to be the pleading of an express agreement, and contend that plaintiff must fail because there was no evidence of an express agreement to divide the profits equally. But we do not agree with that view. If the facts stated are such that the law implies such an agreement, the pleader may with propriety after stating the facts draw that conclusion. The counsel is correct to this extent, if the contract relied on is express, it must be so pleaded, but if it is implied, the facts out of which it is claimed to arise must be pleaded. Wells v. Railroad, 35 Mo. 164, and the other authorities cited in the brief of respondent sustain this view.''

As the second count of the petition is similar to the first, the above ruling applies. We hold defendant's citations on this point are not to the contrary.

It is further noted defendant does not contend the petition unites two causes of action in one count, but if he did he has waived such objection by his failure to file a motion to require plaintiff to elect, or to state his causes of action separately. Defendant answered to the merits. The Supreme Court in Jordan v. Transit Company, 202 Mo. 418, 426, 101 S. W. 11, states the rule as follows:

''Where two causes of action that may by authority of the statute (sec. 593, R. S. 1899) be united in one petition, each in a separate count, are improperly blended in one count the defect is reached by a motion to require the plaintiff to elect one and to strike out the other. [Citing cases.] And in Paddock v. Somes, 102 Mo. 226, 1. c. 235, it was held that by pleading to the merits the defendant waived the defect. To the same effect it was held in Christal v. Craig, supra. The rule laid down in those cases is that when a defendant pleads to the merits he waives all mere informality and irregularity in the petition and can thereafter object to it only on the ground that it states no cause of action or that the court has no jurisdiction of it.''

If it be conceded the first count herein fails to plead accurately and with precision a cause of action based on an implied promise to pay, objection thereto after verdict is not available. [See, also, Loan & Trust Co. v. Surety Co., 226 S. W. (Mo.) 926, 929, and cases therein cited.] The record discloses that plaintiff, by his instructions 1, 2 and 3, given by the court, sought judgment only on the allegation setting forth an implied contract.

It is further urged the peremptory instructions offered by defendant should have been given because it is shown by the evidence that while there was admittedly a partnership between Page and Parkyn, it was not a trading partnership. [Citing Anthony v. Midwest L. S. C. Co., 260 S. W. (Mo.) 94, 100.] In that case it is held that in a trading partnership a silent partner could not set up his claim against the individual debtor of the sole open partner who secured credit on other goods, not included in the partnership agree-

ment, sold in the same store, by reason of being held out as the personal owner of all the goods in the store. There is a different state of facts presented in the case at bar. A partnership in the feeding and handling of cattle is admitted and it is shown in evidence the cattle were purchased on joint notes and mortgages; that defendant Page accepted and paid drafts drawn on him by the known partner for corn and services of the veterinarian; that the feed and services were for the cattle admittedly involved in the partnership; that the partnership had the benefit of them.

It is further contended in this connection that defendant Page is not liable for goods bought or contracts made by Parkyn in his individual capacity. While the testimony is conflicting as to whether the corn and services rendered were for Parkyn individually or for the partnership, there is substantial evidence from which the jury reasonably might conclude they were for the partnership and also for Parkyn individually. However, under the evidence, this was a question for the jury and we are not authorized to disturb their finding thereon. This ruling applies to both the first and second counts. It is admitted a partnership existed between Page and Parkyn covering the feeding and speculating in cattle and hogs; and the testimony shows that during the four years of the existence of the partnership, cattle were purchased with money borrowed on joint notes and mortgages of the constituent partners, and expenses connected with the business, including services of the veterinarian were paid by the partnership and the items charged against the costs of the cattle; therefore the law will hold both partners liable, jointly and severally. [Interstate Coal Co. v. Gordon, 216 S. W. (Mo. App.) 783; Simmons v. Ingram, 78 Mo. App. 603; Tyler v. Tyler, 78 Mo. App. 240.] The general rule is stated in 30 Cyc., p. 522, Par. 14, as follows:

"If the transaction in connection with which a representation or an admission is made within the scope of the partner's authority as agent of the firm, such representation or admission will bind all of the partners, otherwise it will not, unless actually authorized or ratified by them." [Caris v. Nimmons, 92 Mo. App. 66.]

It follows as to the second count of the petition that even though the medicines and medical services of Dr. Sall were not charged on the doctor's books against Page, yet if they were furnished for the partnership cattle, Page is liable therefor if, in fact, he was a partner. [Braches v. Anderson, 14 Mo. 441.]

It is urged plaintiff's instructions 2 and 3 are erroneous because they only embody in concrete form the theory of the law upon which plaintiff tried his case; that is, all that was necessary to fix liability upon Page was to show that he and Parkyn were partners in certain cattle and that the corn and medical services were fur-

nished to cattle belonging to the partnership. Defendant's position in this respect, obviously, is based upon his contention that the petition alleges an explicit contract. We have already determined this point against defendant and need not discuss it further. The instructions correctly declare the law applicable to the facts before us under the theory upon which plaintiff tried his case and there was no error in giving the instructions. Defendant's theory of the case was properly submitted to the jury in his instructions 4 and 5, to the effect that if the feed and pasturage, likewise the medical services, were furnished upon individual contracts with Parkyn their finding should be for the defendant. On this issue the jury found against defendant and we may not disturb their finding. The judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.