260 S.W.2d 353 (1953)
KEARNS et al.
v.
SPARKS et al. BUCKNER
v.
HEAD et al.
Nos. 28565, 28573, 28574, 28575.
St. Louis Court of Appeals. Missouri.
July 14, 1953.
As Modified on Denial of Rehearing September 11, 1953.
*355 Smith & Smith, Farmington, for appellants Everett Sparks, Lottie Sparks and Jesse Howell.
*356 Roberts & Roberts, Farmington, for appellant T. J. Buckner.
Henri Sursa, Fredericktown, Finley & Lucas, Ralph T. Finley, St. Louis, for respondents.
WOLFE, Commissioner.
This is an action in which the plaintiffs sought actual and punitive damages for a loss they sustained in a real estate transaction. They charged the defendants with fraudulently selling property to them by an instrument altered after its execution and not conveying good title. By reason of the defective conveyance the plaintiffs lost the property and suffered resulting damages. Defendant Buckner asserted a counterclaim against the plaintiffs on a note which they had signed and this same defendant as a third-party plaintiff sought judgment against five added party defendants who had also signed a note in connection with plaintiffs' attempted purchase. A jury was waived and the trial by the court resulted in a judgment against Buckner on his claims and a judgment in favor of the plaintiffs and against all of the original defendants in the sum of $527.97 actual damages and $3,000 punitive damages. These defendants each prosecute their separate appeals.
The cause here under consideration is one of three suits arising primarily out of some transactions that defendant Everett Sparks had with a widow named Lena Ratley. Sparks and his wife were in the undertaking business in Flat River, Missouri, and upon the death of Mrs. Ratley's husband she employed them to conduct the funeral. When it came to settling the funeral bill, Mrs. Ratley asked if Sparks and his wife would be interested in buying her house in Elvins, Missouri. Sparks agreed to buy the house and paid her $660 in cash with the understanding that he would take credit on the balance of the purchase price for the amount of the funeral bill and pay her the difference, or an additional $840. Sparks and his wife employed Mr. Jesse Howell, a notary public, to draft the deed, and he drew up a general warranty deed from Lena Ratley to Everett Sparks and his wife, Lottie Sparks.
Howell took the instrument to Mrs. Ratley, who signed it, and he acknowledged her signature on May 1, 1947.
On the first of June of the same year Merlin Kearns, one of the plaintiffs in the present suit, heard that Sparks was selling the Ratley house in Elvins. He was familiar with the property and was interested in buying it for himself and wife, so he went to see Sparks and was told that the house could be purchased for $1,750. The price was satisfactory to Kearns, but he was obliged to borrow the full amount of it before he could close the transaction. In order to do this, he called upon T. J. Buckner, one of the present defendants, who was in the loan and lumber business.
According to Kearns he went to Buckner's office and asked him if he would make a loan of $1,750 for the purpose of buying the house. Buckner at first declined, stating that he was no longer lending money, but when he was informed that Sparks was offering the house for sale he said that Sparks owed him some money and he thought that he could make the loan. He asked Kearns to return to his office a day or so later. When Kearns did return, Buckner told him that he had talked to Sparks and that he would make the loan and take care of all the details. The final arrangement was that one note for $1,000 was to be given by Kearns and his wife secured by a deed of trust on the property and another unsecured note for $750 signed by five comakers was to be given for the balance of the purchase price
At the time the negotiations were in progress Sparks left a check for $20 with Buckner to pay for an abstract of title. The check was payable to Kearns, but he endorsed it over to Buckner who assured him that no abstract was necessary as he, Buckner, had examined the records and found that the title was good. When Kearns delivered to Buckner the notes and deed of trust, Buckner told him that the deal was closed and he could move in the house at any time. The deed that Buckner received from Sparks for the transfer of the property to Kearns and his *357 wife was the original deed that Lena Ratley had made to Everett and Lottie Sparks except that their names had been erased by Howell, the notary, and the names of Merlin Kearns and Viola Kearns, his wife, had been written over the erasure. This change was made by Howell at Sparks' request and Lena Ratley had never been informed of it.
According to Buckner he gave Sparks a check for the amount of the agreed purchase price, but Sparks testified that at the time the deal was closed he owed the Miners Lumber Company $235, and that the amount of this debt was deducted from the purchase price and he received from Buckner a check for the difference.
After Buckner told Kearns that the deal was closed Kearns called on Mrs. Ratley and helped her move her furniture and he and his wife took over occupancy. He made a number of repairs on the house at a total cost of $250 and over a course of time paid interest amounting to $85 on the $1,000 note and $369 on the principal sum of the $750 note. In addition to this he paid taxes and an insurance premium.
Meanwhile, Lena Ratley, who had received nothing from Sparks except the original cash payment and the satisfaction of the funeral bill, brought suit against him and recovered a judgment for $873 in March of 1948. She sought to enforce the judgment by execution but the writ was returned unsatisfied. In July of 1948 she brought a suit to have the prior judgment declared a vendor's lien against the property then occupied by Kearns and his wife. The defendants were Everett Sparks, Merlin Kearns and his wife, Viola. In that action Lena Ratley again prevailed and the court declared the judgment against Sparks to be a special vendor's lien against the property, and directed that the property be sold to satisfy the lien.
Kearns was a man of no experience in real estate transactions. He was a young returned soldier training as a carpenter under the veterans training program. He had left all of the details of the real estate transfer in the hands of Buckner and never saw the deed in question until after the suit was filed by Lena Ratley to establish a lien on the property. When he was served in that action, he went again to Buckner who assured him that there was nothing to the suit. Buckner said, however, that they were both in the deal together and that they had better get a lawyer and divide the costs equally between them. He then took Kearns to the office of a lawyer in Flat River. This lawyer also represented Sparks but he undertook to represent Kearns without informing him that his interest was in conflict with Sparks' interest. The determination of the issues of that case, as stated, resulted in Kearns and his wife losing the property they thought they had purchased.
It was upon the foregoing evidence that the court made its finding of fraud with the resulting judgment. Much of the testimony is uncontradicted and many of the facts have been previously adjudicated, but there was some testimony in conflict with Kearns' version of the transactions and such evidence shall be stated as it relates to the points raised.
The first complaint of all the appellants is directed against the third amended petition that the plaintiffs filed after the case had been once closed and then reopened for the taking of further testimony. It is asserted by defendants Everett Sparks, Lottie Sparks and Jesse Howell that the petition introduced new issues and by so doing prejudiced their rights. This is an apparent attempt to assert the old rule against departure. The former rule against departure which confined the petition to the cause first stated has been held inconsistent with the new code and so a plaintiff may properly amend his petition even though it departs from the theory first relied upon. White v. Sievers, 359 Mo. 145, 221 S.W.2d 118; Doutt v. Watson, Mo.App., 231 S.W.2d 230; Kendrick v. Kendrick, Mo.App., 251 S.W.2d 329.
If in fact the petition as amended did in any way change the plaintiffs' cause of action, it is not shown how the complaining defendants were prejudiced by it. They did not ask for a continuance and they were certainly free to put in further testimony *358 if the new evidence offered by plaintiffs could have been refuted or explained. There is nothing to indicate that any of the defendants were prejudiced by the filing of the third amended petition and the court did not err in permitting the filing of it. Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015.
All of the defendants claim that the petition fails to state a cause of action. It is asserted by defendant Buckner, who made the loan to the plaintiffs and closed the deal with Sparks, that the necessary elements of fraud were not pleaded. In Meriwether v. Lumbard, Mo.App., 246 S.W.2d 363, loc. cit. 367, Judge Holman, speaking for this court, said:
"The essential elements of actionable fraud are frequently defined in the authorities as (1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity on the part of the person making the representation, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) ignorance of its falsity on the part of the person to whom the representation is made, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury."
The petition charges that Buckner represented that the title was good while knowing that the deed was altered. It is alleged that Kearns lost the property by reason of the insufficiency of the deed so the representation was material. It is alleged that the representation that the deed was good was made at the time Kearns was ready to sign the notes and give collateral for the loan. This was a sufficient averment that it was made with the intention that it should be acted upon. It is also alleged that the plaintiffs knew nothing about real estate transactions and were relying wholly upon Buckner and that as a consequence of his fraudulent representations and the fraudulent acts of others plaintiffs lost the property. Thus it is evident that all of the allegations essential to a charge of fraud are present.
While it is true that the petition is redundant and commingles with fraud charges of negligent acts on the part of Buckner, the allegations are broad and might well be construed as an effort on the part of the pleader to join two theories of recovery in one count, which is bad pleading; but Buckner failed to move to compel the plaintiffs to elect which remedy they were pursuing against him and this was necessary to preserve the future objection to the petition. His claim that the petition fails to state a charge of fraud against him is not well taken. Miller v. Harpster, 273 Mo. 605, 201 S.W. 854; Ganahl v. United Railways Company of St. Louis, 197 Mo. App. 495, 197 S.W. 159; Hartz v. Page, 224 Mo.App. 83, 20 S.W.2d 701; Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570.
Insofar as the sufficiency of the petition to state a cause of action against the other defendants is concerned, the petition does not use the term negligence in relation to their acts, but avers that all that they did was fraudulently done. It charges that Sparks and his wife acted together and that at their request Howell, the notary, fraudulently altered the deed from Mrs. Ratley to them in a joint conspiracy. It recites all of the acts that resulted in the loss of the property and is sufficient insofar as it states the elements of fraud.
But these defendants, Howell, Sparks and his wife, state that since the petition alleges that Buckner, acting as agent for Kearns and his wife, had knowledge of the alteration of the deed and of Sparks' transaction with Mrs. Ratley, the plaintiffs are bound by the acts of their agent and are charged with their agent's knowledge. As a general proposition it is true that the knowledge of the agent is imputed to the principal and we are cited by these appellants to Hickman v. Green, 123 Mo. 165, 22 S.W. 455, 27 S.W. 440, 443, 29 L.R.A. 39, which so holds. The court in that case, however, went on to say: "When the agent is in collusion with a third person to defraud the principal, the latter will not be responsible for the knowledge of the agent in relation to such fraud." So, in this case, since Howell,
*359 Sparks and Buckner are charged with acting together, the agency of Buckner affords the other defendants no escape from the charge of fraud.
There is an allegation that Sparks told Kearns that he was only interested in getting the funeral bill out of the Ratley property and that any excess would be paid to Mrs. Ratley. It is asserted that this alleged knowledge of the indebtedness is sufficient to defeat the plaintiffs' action in fraud. The contention, of course, completely overlooks the other allegations that Mrs. Ratley was not paid and that the deed was altered. So it is not well taken and as to the points before us the petition was adequate to state a charge of fraud against all defendants.
Howell, Sparks and his wife jointly contend that the evidence was insufficient to support the judgment, and they predicate this contention chiefly upon the premise that since Buckner was the plaintiffs' agent and since he had knowledge of the alteration of the deed, the plaintiffs are charged with his knowledge. This is nothing more than a restatement of their objection to the petition and for the same reasons it must be ruled against them.
But they go further and state that the record in this case and in the case of Ratley v. Sparks, et al., to enforce Mrs. Ratley's vendor's lien, show that the plaintiffs were both careless and unbusiness-like. There are situations where representations of value are made and means of knowledge on the subject are equally available to both parties that the law leaves the complaining party where it finds him because of his lack of diligence. McCaw v. O'Malley, 298 Mo. 401, 249 S.W. 41. But, as stated in Judd v. Walker, 114 Mo. App. 128, 89 S.W. 558, 561, 562, Id., 215 Mo. 312, loc. cit. 328, 114 S.W. 979, "the general doctrine laid down in the books as elementary is that the doctrine of notice and means of knowledge has no application where distinct and positive representations of fact have been made, have been relied upon, and have induced action." In the same case the court also said: "The law will not hear the guilty party say, `You were yourself guilty of negligence,' or `You ought not to have trusted me.'" Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125; Monsanto Chemical Works v. American Zinc, Lead & Smelting Co., Mo.Sup., 253 S.W. 1006. There was evidence that the plaintiffs were relying upon their agent whom they had known for a number of years. They were ignorant of real estate transactions and under circumstances similar to these the law does not permit fraud feasors to escape on the ground that if the defrauded party had been careful their fraud would have been detected.
Defendant Buckner urges that fraud will never be presumed and must be established by clear and convincing evidence, and such is the law. Gockel v. Gockel, Mo.Sup., 66 S.W.2d 867; Tobin v. Wood, Mo.Sup., 159 S.W.2d 287; Weitzman v. Weitzman, Mo.Sup., 156 S.W. 2d 906. Without restating the evidence it is quite clear that a false representation was made by Buckner to Kearns when he assured him that the title was good. It is also clear that Kearns completely relied upon Buckner and suffered his loss by so doing. It is evident out of the deal that the lumber company with which Buckner was connected got $235 owed by Sparks, who seems from all of the evidence to be a man who regards his financial obligations very lightly. There was also evidence that Buckner had been in the real estate business and yet he paid over money to Sparks who was not a party to the deed after it had been altered. From all of this and the other acts stated, it seems that the evidence meets the proof required to hold Buckner guilty of the fraud charged.
A point raised by the other defendants goes to the admission in evidence of the transcript of their testimony in the case of Ratley v. Sparks, et al. and depositions of Sparks taken in the first suit by Mrs. Ratley against him. It is asserted that the ruling in Westinghouse Electric Supply Co. v. Binger, Mo.App., 230 S.W.2d 166, 168, wherein we held that certain depositions in a prior suit were not admissible, is applicable in the case before *360 us. We pointed out in Westinghouse Electric Supply Co. v. Binger that "As a general rule depositions taken in a case other than the one on trial are admissible for impeachment purposes or for the purpose of showing admissions against interest where the facts testified to arise from the same matters as those being tried." But we held that the depositions were not admissible, pointing out that Binger, who was not a party to the prior suit, had not signed the depositions sought to be offered. Such are not the facts in the suit before us, and their testimony at the prior trial was admissible.
Buckner also urges that the court erred in admitting his testimony given at the trial of Ratley v. Sparks, et al. We are cited to Evans v. Sears, Roebuck & Co., Mo.App., 129 S.W.2d 53, and Collins v. Leahy, 344 Mo. 250, 125 S.W.2d 874. In both of those cases the testimony excluded was not that of a party to the suits then on trial, and as stated in Evans v. Sears, Roebuck & Co., the basis for excluding the testimony of a witness in a prior suit is that it denies the right to cross-examine the witness. No such right is lost where the testimony is that of a defendant in the current suit where he may take the stand and explain or elaborate on the testimony given at the previous trial.
It is asserted on behalf of Howell, the notary, that the court erred in sustaining an objection to a question put to him. He was asked if he had any intention of defrauding Kearns. This was, of course, not material if he was knowingly assisting Sparks and Buckner in a scheme to defraud, and since the witness fully testified that the only reason he had for altering the deed was to save Sparks the cost of recording, he fully covered the subject matter of the question and no error was committed in sustaining the objection.
On behalf of Lottie Sparks it is contended that she should not be held liable as there is no showing that her husband was acting as her agent. The evidence, however, shows that it was a joint venture and that Lottie Sparks knew of the deed to her and her husband and knew of the alteration of it. Sparks himself testified, without objection, that his wife was a partner in the transaction with Mrs. Ratley and profited by it. Under such circumstances she would be liable in damages even though she did not participate in the fraud. 68 C.J.S., Partnership, § 170, p. 620. In Monmouth College v. Dockery, 241 Mo. 522, loc. cit. 542, 145 S.W. 785, 790, after stating the general rule of partnership liability for acts of the parties, the court stated:
"The principle extends further, so as to bind the firm for the frauds committed by one partner in the course of the transactions and business of the partnership, even when the other partners had not the slightest connection with or knowledge of or participation in the fraud".
It is also claimed that the court erred in permitting the cross-examination of Howell and Sparks to the extent allowed. In Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 649, 157 A.L.R. 598, it was said:
"The cross-examination of witnesses is one of the safeguards to accuracy and truthfulness. Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 16, 160 S.W.2d 740, 742, 142 A.L.R. 666. Its purpose is to sift, modify or explain what has been said, to develop new or old facts in a view favorable to the cross-examiner or to discredit the witness."
As to the scope of cross-examination, we stated in American Displays v. E. T. Swiney Motors, Mo.App., 240 S.W.2d 732, loc. cit. 736:
"It is axiomatic that the limit to which cross-examination shall be permitted to go is a matter reposing largely within the discretion of the trial court. Generally speaking, a rather wide latitude is allowed."
Howell was asked if he could see the erasures on the deed and Sparks was questioned about matters relating to the interest of Lottie Sparks. All of this was within *361 the bounds of the subject under inquiry and was not vulnerable to the objections directed against it.
Buckner claims that he should have been awarded a judgment for the unpaid balance on the notes, but it seems quite obvious that if he obtained them by fraud he cannot recover upon them.
Howell, Sparks and his wife jointly assert that punitive damages should not have been awarded in that their acts were not the intentional doing of anything wrongful and that the evidence reveals that they thought their acts were not fraudulent. The contention is not supported by the record for although the defendants testified that they thought they were doing no wrong, it was clear that wrongful acts had been committed, and the trial judge had a right to disbelieve their avowal of innocence, and he apparently did. We defer to him upon this score as it goes to their credibility which he was more able to appraise. The question of punitive damages was discussed at some length in Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, loc. cit. 1088, wherein this court stated:
"Regardless of what the rule may be in other jurisdictions or of the refinements and limitations with which text-writers may see fit to state it, the courts of this state seem now to be committed to the proposition that in cases of fraud and deceit punitive damages may be awarded where legal malice is present. Luikart v. Miller, Mo.Sup., 48 S.W.2d 867; Finke v. Boyer, 331 Mo. 1242, 56 S.W.2d 372. Moreover, by legal malice the courts have in mind simply the accepted theory of the intentional doing of a wrongful act without just cause or excuse, and not the necessity for the showing of any spite or ill will, or that the particular act was willfully or wantonly done. Luikart v. Miller, supra; Lampert v. Judge & Dolph Drug Co., 238 Mo. 409, 141 S.W. 1095, 37 L.R.A.,N.S. 533, Ann.Cas. 1913A, 351."
Under authority of the above case punitive damages were properly awarded.
For the foregoing reasons, it is the recommendation of the Commissioner that the judgment be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., ANDERSON, J., and DEW, Special Judge, concur.